**Dennis J. OGRODOWCZYK, D.C., Petitioner/Appellee,**

v.

**TENNESSEE BOARD FOR LICENSING HEALTH CARE FACILITIES and State of Tennessee Department of Health and Environment, Respondents/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 24, 1994.

Application for Permission to Appeal Denied by Supreme Court Oct. 3, 1994.

Richard J. Braun, Richard J. Braun & Associates, Nashville, for petitioner/appellee.

Charles W. Burson, Atty. Gen. and Reporter, Sue A. Sheldon, Asst. Atty. Gen., Nashville, for respondents/appellants.

### OPINION

TODD, Presiding Judge.

This is a judicial review of an administrative declaratory order regarding the practice of chiropractic in medical hospitals of the State. The Trial Court reversed the order of the Board for Licensing Health Care Facilities, and the Board appealed.

The Department of Health is the state agency for licensing and regulating hospitals in Tennessee, T.C.A. § 68–11–202(a)(1). The Board is empowered to carry out this duty, T.C.A. § 68–11–202(a)(2); with rule-making authority, T.C.A. § 68–11–209(a).

Petitioner is duly licensed to practice chiropractic in Tennessee.

The administrative record contains an undated and unfiled petition of the captioned petitioner to the Board seeking a declaratory order responding to five questions relating to staff privileges for licensed chiropractors in hospitals of Tennessee.

On December 4, 1989, counsel for the Department rendered an "Answer and Memorandum of Law on Behalf of the State."

There is no evidence of when, if ever, it was filed.

On June 13, 1988, an agreed order was entered by an administrative judge consolidating the petitions of petitioner and that of Tennessee Chiropractic Association for hearing.

| | |
|---|---|
| IN THE MATTER OF:<br>DENNIS J. OGRODOWCZYK, D.C.<br>AND<br>THE TENNESSEE CHIROPRACTIC<br>ASSOCIATION<br><br>    Petitioner | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PETITION FOR DECLARATORY ORDER

OGC NO. 88–0186 and 88–0134
DOCKET NO. 17.17–D–88–0259D
DOCKET NO. 17.11–D–88–0277A

However, there is no indication that the petitioner, Ogrodowczyk, was a party to the agreement.

| | |
|---|---|
| IN THE MATTER OF:<br><br><br>THE TENNESSEE CHIROPRACTIC<br>ASSOCIATION,<br><br>    Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PETITION FOR DECLARATORY ORDER

OGC NO. 88–0134
DOCKET NO. 17.11–D–90–0250A

On April 4, 1990, there was filed in the record a "Memorandum of Agreement Between the Board and The Tennessee Chiropractic Association." The document is captioned:

On the same date, April 4, 1990, the Board entered a "Declaratory Order" under the following caption:

Said order reads in pertinent part as follows:

1. The current rules and regulations for medical staff and clinical privileges at a hospital state as follows:

The hospital medical staff by-laws shall include provision for medical staff privileges for practitioners of those schools of the healing arts who are licensed to perform acts or functions which are appropriate to the hospital (i.e., physicians, dentists, and podiatrists). Privileges may be denied as otherwise appropriate under these standards.

Section 8–3–.02(2)(e) provides:

The hospital and medical staff by-laws may include provisions for medical staff appointments granting either active, associate or courtesy medical staff membership and/or grant clinical privileges to licensed, clinical psychologists, certified nurse-midwives and optometrists. Such individuals must practice within the scope of their Tennessee license, except they cannot be granted independent patient admission privileges, and the overall care of each patient must be under the supervision of a physician member of the medical staff.

Section 1200–8–3–.02(3) provides,

Qualifications. To be eligible for membership on a staff an applicant must be a graduate of an approved program of medicine, dentistry, osteopathy, podiatry, psychology, nurse midwifery, or optometry legally licensed to practice in the State of Tennessee, competent in his respective field and worthy in character and in matters of professional ethics.

The Board interprets those rules as excluding chiropractors and any other health care practitioner not specifically enumerated from having medical staff privileges or clinical privileges of any kind encountered in a hospital setting.

2. The rules on medical staff and clinical privileges do not preclude or govern all activities which may be performed in hos-

pitals by independent health care practitioners. The Board hereby interprets the hospital rules to permit the following without regard to whether medical staff or clinical privileges are granted:

(1) Doctors of chiropractic may order diagnostic evaluations on an outpatient basis for all purposes within the scope of their practice and in accordance with all hospital policies and procedures.

(2) Doctors of medicine or osteopathy may consult with doctors of chiropractic who may treat patients on an inpatient or outpatient hospital basis within the scope of their practice in accordance with all hospital policies and procedures when the attending doctor of medicine or osteopathy has requested chiropractic consultation and/or care for the patient, and the attending doctor of medicine or osteopathy remains ultimately responsible for the medical care of the patient.

(3) Nothing in the rules of the Board shall be construed as prohibiting a member of the hospital staff with admission privileges from admitting a patient who is also a patient of a doctor of chiropractic to the hospital, and such hospital staff member may admit and treat such patient when he determines admission is in the best interest of the patient and is otherwise consistent with hospital policies and procedures.

The activities defined in paragraph two hereinabove are not mandatory, but rather are to be determined on a hospital by hospital basis pursuant to any given hospital's practice and procedures. Such practice and procedures may include provisions for granting doctors of chiropractic professional status privileges consistent with this Order.

3. The Board's interpretation as set out above is not in violation of 15 U.S.C. § 1 and 2.

On May 25, 1990, the petitioner herein was notified that his petition was to be scheduled for hearing. It may be inferred that the petition of the chiropractic association and of the individual petitioner, previously consolidated for trial had been separated.

On September 18, 1990, the Board entered its "Declaratory Order" containing 34 "Findings of Fact" and 14 "Conclusions of Law." The order concludes as follows:

The Board hereby issues the following Order:

1. Rules 1200–8–3–.02(b)(c) and (e) and Rule 1200–8–3–02(e) preclude hospitals from granting medical staff privileges to doctors of chiropractic.

2. The Board hereby adopts the attached Declaratory Order effective April 4, 1990 issued by this Board on March 15, 1990 and is incorporated by reference as if fully set out herein.

Upon petition to the Trial Court for review of the decision of the Board, the Trial Judge filed a comprehensive opinion concluding as follows:

In conclusion, the Court finds that the decision of the Board, which denied hospitals the right to grant medical staff privileges to doctors of chiropractic, is not supported by evidence which is both substantial and material in the light of the entire record. Therefore, the decision of the Board is reversed. This matter is remanded to the Board for further proceedings, not inconsistent with this memorandum opinion.

Judgment was entered accordingly, and the Board appealed, presenting the following issues:

1. Whether the Chancellor, in reviewing the Declaratory Order of the Board for Licensing Health Care Facilities, erred in the following findings and conclusions:

a. That the Board's Findings of Fact Nos. 14–19 and 28–30 contradict the Board's decision prohibiting hospitals from granting staff privileges to doctors of chiropractic.

b. That the Board's decision, denying hospitals the right to grant medical staff privileges to doctors of chiropractic, is not supported by evidence which is both substantial and material in the light of the entire record.

2. Whether the Chancellor erred in reversing the Declaratory Order of the Board, based upon these findings and conclusions.

#### (a) *Contradiction between findings of fact and prohibition of staff privileges.*

▪ The "Findings of Fact" of the Board include a recitation of evidence as well as conclusions of fact from the evidence, which interferes with precise determination of just what facts were found. For example, finding No. 14 recites certain evidence favorable to petitioner, but the "finding" is:

... The Board finds that since the rules of the Board do not prevent a chiropractor from consulting with a patient's admitting or treating physician, any restriction on continuity of care is an individual hospital or physician policy. The Board expects the admitting physician to remain ultimately liable for the patient's care while in the hospital. As such, if the admitting and treating physician believes chiropractic care is in the best interest of the patient he may consult with a chiropractor who could then render chiropractic care on an inpatient hospital basis....

Finding No. 15 is not inconsistent with its conclusion. It is simply an observation as to the trend toward less in-patient treatment.

Finding No. 16 is not a finding at all, it is:
16. Some testimony offered the Board was that hospital privileges would enhance the professional status of chiropractors.

Findings Nos. 17 and 18 are recitations of testimony and not findings.

Finding No. 19 supports the conclusion of the Board. It reads as follows:
19. Part of a patient's well being is his or her comfort with their primary care physician. Most patients of chiropractic physicians are not admitted for truly chiropractic treatment but are admitted for medical purposes.

Finding No. 28 reads as follows:
28. The Board adopts the position of the Attorney General found in Opinion No. 317; March 10, 1981 as follows:
It is the opinion of this office that the Board for Licensing Health Care Facilities could promulgate regulations permitting state-licensed hospitals to grant chiropractors admission and practice privileges within the hospitals, upon the condition that there is a coadmitting physician who

is responsible for the overall medical care of the patient.

It is further the opinion of this office that, if the Board of Licensing Health Care Facilities finds that the patients of chiropractors require access to hospitals for proper health care, then the board could require hospitals to grant chiropractors admission or practice privileges, upon the same conditions.

The opinion adopted a statement of what it *could* do, but did not find that it *should* exercise such power. Such opinion is not contradictory of the judgment of the Board as to what it should do.

Findings Nos. 29 and 30 read as follows:
29. The Board finds that chiropractors may have need to order noninvasive diagnostic tests within the scope of their practice. Such tests are available on an outpatient hospital basis. Each hospital may determine whether practitioners ordering tests need staff privileges. The rules of the Board do not require a hospital to limit such testing to medical staff.
30. Pursuant to a settlement with the Tennessee Chiropractic Association, doctors of chiropractic, within the scope of their license, may now order radiology and similar diagnostic testing and obtain such testing on an outpatient basis at Tennessee hospitals, in accordance with all hospital policies and procedures.

These findings relate to diagnostic tests and not to staff status for chiropractors. They do not contradict the conclusions of the Board.

This Court has determined that the conclusions of the Board are not contradicted by its findings.

#### (b) *Substantial and material evidence to support denial of staff privileges to chiropractors.*

▪ Appellants argue that petitioner has the burden of proving that staff privileges for chiropractors would be in the public interest. Such may well be the burden in hearings before the Board, but this is not necessarily the rule upon judicial review. A Trial Court must review factual issues upon a standard of substantial and material evidence. This is not a broad, *de novo* review; it is restricted

to the record; and the agency finding may not be reversed or modified, unless arbitrary or capricious, or characterized by abuse, or clearly unwarranted exercise of discretion, and must stand if supported by substantial and material evidence. T.C.A. § 4–5–322(h)(5), *C.F. Indus. v. Tenn. Pub. Svc. Comm.,* Tenn.1980, 599 S.W.2d 536.

■ Substantial and material evidence is such relevant evidence as a reasonable mind might accept to support a rational conclusion, and such as to furnish a sound basis for the action under consideration. *Sou. Ry. v. State Bd. of Equalization,* Tenn.1984, 682 S.W.2d 196; *DePriest v. Puett,* Tenn.App.1984, 669 S.W.2d 669, cert. den., 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397.

■ In the present case, the Trial Court has found that the administrative decision is not supported by substantial and material evidence. On appeal, the Board insists that this finding was erroneous. The Board, as appellant, has the burden of showing error. The best way for the appellant to show error in the present instance would be to point out to this Court the substantial and material evidence which supports the decision of the Board. The brief of appellant cites an abundance of such evidence.

The Board heard evidence of experiences in other states where chiropractors had been granted hospital staff privileges.

Physicians testified that, increasingly, hospitalization is prescribed principally for the severely ill who are not in condition to tolerate chiropractic manipulation.

The Board reviewed the records of patients who had been hospitalized by petitioner, and the reasons therefor. A high percentage of admissions by petitioner were deemed inappropriate by several witnesses.

Other evidence disclosed the lack of training of chiropractors in hospital protocol and practice, and the "communication gap" between chiropractors and hospital staff.

There was evidence that few chiropractors receive any hospital experience as a part of their medical training.

Also, there was evidence of differences in medical and chiropractic terminology which would tend toward confusion.

There was evidence (from chiropractors) that patients would benefit from the availability of both medical and chiropractic treatment in a hospital. However, the Board saw fit to give greater weight to evidence of the undesirability of such an arrangement, and concluded accordingly.

■ Neither the Trial Court nor this Court has the power to substitute its opinion for that of the Board based upon substantial and material evidence. *Public Service Commission v. Gen. Tel. Co. of the S. East,* Tenn.1977, 555 S.W.2d 395.

The petitioner has presented two issues, of which the first is:

1. The Board denied petitioner an impartial and unbiased hearing by the refusal of the medical doctors to recuse themselves.

■ The petitioner moved for disqualification of certain medical doctors from sitting on the case. The motion was denied, and the challenged board members refused to recuse themselves. One member refused to submit to a *voir dire.* Another admitted that he had been sued by petitioner and had served on a task force which considered and reported on the matters at issue. Another (an orthopedist) conceded that he treats some complaints which are treated by chiropractors, but in a different manner.

Petitioner cites *Nurse Midwifery Associates v. Hibbett,* 6th Cir.1990, 918 F.2d 605, which was an anti-trust action brought by two nurse midwives, their affiliated obstetrician, and their patients against three hospitals, certain members of the staffs of two of the hospitals, an obstetrician, and an insurance company alleging conspiracies in restraint-of-trade, in violation of a federal statute. The present appeal does not arise from such a case. Nothing is found in said authority to support petitioner's first issue.

Petitioner argues that physicians who testified were biased competitors. Even if this were true, the bias would not invalidate the decision of the Board.

■ Petitioner argues that the right to practice chiropractic medicine is a federally protected right. Even if this were true, the

**252**

decision of the Board does not deny such a right. There is no showing that chiropractic cannot be practiced without access to a medically oriented hospital.

Petitioner argues that he is entitled to an impartial tribunal when his liberty or property interest is subject to a judgment of a court. However, there is no showing that petitioner's liberty or property were the subject of the Board's decision, and there is no showing that the Board is a court. Nor is there sufficient showing of bias of the Board as a whole or of any individual member of the Board as provided by T.C.A. § 4–5–302.

Petitioner cites a decision enjoining proceedings of a Board of Optometry because of financial interest in the outcome. This is not an action to enjoin proceedings, and the evidence adduced in this record would not support such an injunction.

█ Petitioner complains of the participation of one or more of the members of the Board in a task force study of the problems of chiropractors in hospitals. Such activity does not invalidate the action of the Board. *See* 16D C.J.S.—Constitutional Law § 1179, p. 156.

█ In order to invalidate the decision of an administrative agency, there must be a showing that the decision is arbitrary and capricious, characterized by abuse of authority, clearly and unwarranted exercise of authority, or unsupported by substantial and material evidence, T.C.A. § 4–5–322(h)(5). There is insufficient evidence of bias to require recusal of any member of the Board.

█ Petitioner complains of the refusal of a board member to respond to *voir dire.* Board members are not subject to *voir dire.* T.C.A. § 4–5–302.

█ Finally, petitioner challenges the decision of the Administrative Law Judge to quash a subpoena *duces tecum* to the Tennessee Medical Association to produce all documents made, sent or received from January 1, 1980, to January 1, 1990, in the following categories:

1. Documents which make reference to the subject of whether or not chiropractors should or should not be afforded any type of clinical or other privileges in a hospital.

2. Documents which relate to the subject of whether or not medical doctors should or should not cooperate with chiropractors in the care and treatment of patients.

3. Documents which relate to the subject of whether or not orthopaedic medical doctors compete with chiropractors.

4. Communications between individual medical doctors and/or hospitals, hospital administrators and the Tennessee Medical Association which relate or refer to the quality of patient care provided by chiropractors or any of the other subjects referred to in categories numbered 1—3.

The Administrative Law Judge determined that the subpoena would impose an undue burden and substantial expense, that most of the materials were readily available elsewhere, and that the materials were not sufficiently relevant to the proceedings to justify the burden and expense.

Such a determination rested within the sound discretion of the Administrative Law Judge. Insufficient grounds are shown for disturbing this discretionary decision.

Appellee's counter-issues demonstrate no grounds for reversing the decision of the Board.

This Court concludes that the Trial Court erred in reversing the order of the Board and that said order should be affirmed.

The judgment of the Trial Court, is reversed and vacated and the order of the Board is affirmed. Costs of this appeal and trial costs are taxed against the petitioner/appellee. The cause is remanded to the Trial Court for collection of costs accrued in that Court, and for any other necessary proceedings.

Reversed and Remanded.

LEWIS, J., concurs.

CANTRELL, J., concurs in separate opinion.

CANTRELL, Judge, concurring.

I concur in the majority opinion but I write separately because of my concern about the bias charge leveled at the board. I believe that due process does require an opportunity

to be heard before a fair and impartial tribunal. And an administrative board composed of members who stand to benefit from their decision is not impartial. *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

But the situation here is not the same one that confronted the court in *Gibson v. Berryhill*. In that case *every* board member had a pecuniary interest that might be affected by the board's decision. Although actual bias was not shown by the record, the appearance of partiality was enough to disqualify the board members, using due process analysis.

In this case three members out of a seventeen member board were medical doctors. One of the three medical doctors was an orthopaedic surgeon. I am not satisfied, however, to presume that the pecuniary interest of any of the three would be affected by the board's vote. The record does not show that it would. And, while the appellee raises an issue about his inability to voir dire two of the three members, I believe the record would have to be developed by more substantive evidence about the specialities of the board members and how the practice of each speciality would be affected if chiropractors had hospital admitting privileges.

This is an important and complicated issue affecting many of the boards and commissions that play such a vital role in state government. The courts should be sensitive to the possibility that state administrative agencies might make arbitrary decisions. I do not think, however, that this is such a case.