# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FREDDIE LEE JONES,      )
                             )

    Plaintiff/Appellant,      )
                             )      Davidson Chancery
                             )      No. 93-3580-I

VS.                         )
                             )      Appeal No.
                             )      01-A-01-9505-CH-00187

MICHAEL C. GREENE,      )
COMMISSIONER, TENNESSEE    )
DEPARTMENT OF SAFETY,     )
                             )
    Defendant/Appellee.     )

---

**FILED**

**December 4, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

---

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For the Plaintiff/Appellant:

E.E. Edwards, III
James A. Simmons
Nashville, Tennessee

For the Defendant/Appellee:

Charles W. Burson
Attorney General and Reporter

Rebecca Lyford
Counsel to the State
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves over $45,000 seized during the search of a house in Memphis for illegal drugs. After the Commissioner of Safety ordered the forfeiture of the money, the person claiming the funds filed a petition for review in the Chancery Court for Davidson County asserting that the forfeiture statutes deprived him of his constitutional right to a jury trial and violated the Equal Protection and Due Process Clauses of the United States and Tennessee Constitutions. The trial court upheld the forfeiture statutes and the forfeiture, and this appeal followed. We have determined that Tennessee's forfeiture statutes are constitutional and that the record contains substantial and material evidence supporting the commissioner's forfeiture order. Accordingly, we affirm the judgment.

## I.

On May 26, 1989, the Shelby County Sheriff's Department obtained a warrant to search the house at 2491 Haischi Street in Memphis based on reliable information that cocaine was being stored and sold there. When the deputies executed the warrant on May 27, 1989, they encountered Halbert Brown[1] who confirmed that he lived in the house. The search yielded four handguns, an M-1 carbine, 0.6 grams of cocaine, 1.5 grams of marijuana, and drug paraphernalia. The deputies also discovered $541 in Mr. Brown's pants pocket and $5,380 in a padlocked closet in one bedroom. In addition, they found a paper grocery sack hidden behind a built-in entertainment center containing over $40,065, divided into two thousand dollar rolls separately wrapped in plastic sandwich bags.

Mr. Brown was arrested and questioned at the scene. He denied that the seized money was his and insisted that he did not know who the money belonged to. After Mr. Brown refused to sign a notice of seizure form, the deputies mailed him a copy of the form several days later by certified mail. The form stated that

---

[1]Mr. Brown had been arrested previously in October 1988 for possessing cocaine for resale. He pled guilty to a lesser possession charge in March 1990 at the same time that he pled guilty to the possession charges resulting from this incident.

the money and other property would be forfeited unless a written claim was filed with the Commissioner of Safety within fifteen days after the date of the notice.

No one filed a timely claim for the property. On August 9, 1989, the commissioner ordered the forfeiture of the $45,986 and notified Mr. Brown of his action by certified mail. On August 16, 1989, a lawyer representing both Mr. Brown and Freddie Lee Jones requested the commissioner to reconsider his order. Mr. Jones asserted that he too resided at 2491 Haischi Street, that all the money found in the house, except the $541 in Mr. Brown's pocket, belonged to him, and that he had not received proper notice of the forfeiture proceeding.[2] The commissioner denied the petition for reconsideration, and the Chancery Court for Davidson County affirmed the commissioner's decision. This court, however, reversed the denial of Mr. Jones's claim and remanded the case to the commissioner for further proceedings. *Brown v. Tennessee Dep't of Safety,* App. No. 01A01-9102-CH-00043, slip op. at 11 (Tenn. Ct. App. April 1, 1992) (No Tenn. R. App. P. 11 application filed).

The commissioner assigned the case to an administrative law judge after the remand. The ALJ denied Mr. Jones's motion to transfer the case to circuit court for a jury trial and conducted a hearing on Mr. Jones's petition for the return of the $45,445 on October 22 and 23, 1992. On June 10, 1993, the ALJ filed an initial order concluding that the $40,065 found in the paper bag hidden behind the entertainment center should be returned to Mr. Jones.

All parties appealed the ALJ's initial decision to the commissioner. On October 4, 1994, the commissioner filed an order denying Mr. Brown's recusal motion and declining to address the constitutionality of the forfeiture statutes. The commissioner also concluded that Mr. Jones had failed to prove that he resided at 2491 Haischi Street when the money was seized and that Mr. Jones had failed to establish an interest in the seized money. Accordingly, the commissioner ordered the forfeiture of the entire $45,986 to the seizing agency.

_____

[2]Mr. Jones was never charged with a criminal offense based on the illegal drugs found during the search of the 2491 Haischi Street house.

Mr. Jones filed a petition for review in the Chancery Court for Davidson County alleging that the forfeiture statute was unconstitutional in several particulars and that the commissioner's decision was not supported by substantial evidence. The trial court determined that the forfeiture statutes were not constitutionally suspect and that the commissioner's decision was supported by substantial evidence. This appeal followed.

## II.

### EVOLUTION OF THE DRUG FORFEITURE STATUTES

Tennessee's drug forfeiture statutes have changed substantially over the past sixty years. The first civil forfeiture procedure was enacted in 1937 when the General Assembly passed the Uniform Narcotic Law.[3] The law required the forfeiture and disposal of "[a]ll narcotic drugs,[4] the lawful possession of which is not established or the title to which cannot be ascertained." *See* Tenn. Code Ann. § 52-1315. It also provided for a judicial forfeiture proceeding conducted by "the court or magistrate having jurisdiction." *See* Tenn. Code Ann. § 52-1315(a).

Eighteen years later, the General Assembly enacted additional legislation regarding the seizure and confiscation of contraband drugs.[5] The "contraband drugs" covered by this Act included marijuana and substances defined as "narcotic drugs" in the Uniform Narcotic Drug Law. *See* Tenn. Code Ann. § 52-1401 (repealed 1971). The new statutes not only authorized the forfeiture of contraband drugs but, for the first time, authorized the forfeiture of conveyances used to transport contraband drugs. *See* Tenn. Code Ann. § 52-1403 (repealed 1971).

---

[3]Act of May 21, 1937, ch. 255, 1937 Tenn. Pub. Acts 1028 (codified at Tenn. Code Ann. §§ 52-1301 through -1323 (repealed 1971)). The legislation tracked the Uniform Narcotic Drug Act drafted by the National Conference of Commissioners on Uniform State Laws in 1932. *See* Uniform Narcotic Drug Act, 9B U. L.A. 11 (amended 1958).

[4]The original statute defined "narcotic drugs" to include cocoa leaves, opium, and every other substance neither chemically nor physically distinguishable from them. Act of May 21, 1937, ch. 255, § 1, 1937 Tenn. Pub. Acts 1028, 1030. Later amendments added other substances to the definition.

[5]Act of Feb. 23, 1955, ch. 83, 1955 Tenn. Pub. Acts 258 (codified originally at Tenn. Code Ann. §§ 52-1401 through -1407; parts later transferred and redesignated as Tenn. Code Ann. §§ 53-11-201 through -204).

In another significant departure from the Uniform Narcotic Drug Law, the 1955 statute provided for an administrative, rather than a judicial, forfeiture proceeding.[6] *See* Tenn. Code Ann. § 52-1404 (codified as amended at Tenn. Code Ann. § 53-11-201 (Supp. 1996)). Persons claiming an interest in property seized as contraband were authorized to file a written claim with the Commissioner of Safety, and the commissioner was empowered to conduct a hearing on the claim.[7] *See* Tenn. Code Ann. § 52-1404. Persons dissatisfied with the commissioner's disposition of the claim were permitted to obtain judicial review by filing a common-law writ of certiorari in the Circuit Court for Davidson County. *See* Tenn. Code Ann. § 52-1405 (codified as Tenn. Code Ann. § 53-11-202(a)-(e)). The review was limited to the record of the proceedings before the commissioner, and the parties were specifically not permitted to introduce additional evidence in the circuit court proceeding.

In 1971 the General Assembly replaced most of the Uniform Narcotic Drug Law with the "Tennessee Drug Control Act of 1971."[8] This Act again increased the number of drugs considered to be "controlled substances."[9] It also expanded the types of property subject to forfeiture to include raw materials and equipment used to produce illegal controlled substances, property used to contain illegal controlled substance or raw materials, and books, records, and other materials used to violate the law.[10] While retaining the administrative forfeiture procedure

---

[6]This administrative proceeding appears to have been patterned after the administrative forfeiture proceedings used for illegal tobacco sales, *see* Act of Mar. 5, 1937, ch. 133, § 7, 1937 Tenn. Pub. Acts 587, 592-94, and illegal manufacture and sale of alcoholic beverages. *See* Act of Mar. 5, 1939, ch. 49, § 19, 1939 Tenn. Pub. Acts 199, 231.

[7]In the absence of a timely claim, the seized property was summarily forfeited. *See* Tenn. Code Ann. § 52-1406 (codified at Tenn. Code Ann. § 53-11-203 (1991)).

[8]Act of May 3, 1971, ch. 163, 1971 Tenn. Pub. Acts 366. The purpose of this Act was "to provide for a comprehensive system of drug and drug abuse control for Tennessee." It was patterned after the Uniform Controlled Substances Act drafted by the National Conference of Commissioners on Uniform State Laws in 1970. *See* Uniform Controlled Substances Act, 9 [Pt. II] U.L.A. 1 (1987).

[9]Act of May 3, 1971, ch. 163, § 2(d), 1971 Tenn. Pub. Acts 366, 367. The term "controlled substance" was later redefined in Act of May 24, 1989, ch. 591, § 1, 1989 Tenn. Pub. Acts 1169, 1254 (presently codified at Tenn. Code Ann. § 39-17-402(4) (Supp. 1996)).

[10]Act of May 3, 1971, ch. 163, §§ 36(a)(2), 36(a)(3), 36(a)(5), 1971 Tenn. Pub. Acts 366, 402-03. This provision was first codified at Tenn. Code Ann. § 52-1433. In 1983, it was transferred and redesignated as Tenn. Code Ann. § 53-11-409, and in 1990 it was again
(continued...)

established in 1955,[11] the Act empowered the circuit and criminal courts to enjoin violations of the controlled substance laws and gave defendants in these civil proceedings a statutory right to a jury trial.[12]

During the intervening twenty-five years, the General Assembly has expanded the scope of the civil drug forfeiture laws on five occasions. In 1972 it added "money or any other thing of value" received in an illegal drug transaction to the list of property subject to forfeiture.[13] In 1983, it authorized the forfeiture of "all proceeds traceable" to an illegal drug transaction,[14] and one year later it authorized the forfeiture of "drug paraphernalia."[15] In 1986, and again in 1994, it modified the scope of the provision relating to the forfeiture of conveyances.[16]

The caption and preamble of the 1986 Act amending the drug forfeiture procedures reveal that the General Assembly considered but rejected a provision authorizing the forfeiture of real property used to facilitate an illegal drug transaction.[17] The General Assembly revisited the issue four years later and determined that both real property used to facilitate an illegal drug transaction and interests in real property acquired with the proceeds of an illegal drug transaction

---

[10](...continued)
transferred and redesignated as Tenn. Code Ann. § 53-11-451.

[11]Act of May 3, 1971, ch. 163, § 36(i), 1971 Tenn. Pub. Acts 366, 405 (codified at Tenn. Code Ann. § 53-11-451(I) (Supp. 1996)).

[12]Act of May 3, 1971, ch. 163, § 34(b), 1971 Tenn. Pub. Acts 366, 400 (codified as amended at Tenn. Code Ann. § 53-11-407 (Supp. 1996)).

[13]Act of Mar. 27, 1972, ch. 597, § 12, 1972 Tenn. Pub. Acts 446, 448-49 (codified as amended at Tenn. Code Ann. § 53-11-451(a)(6) (Supp. 1996)).

[14]Act of May 11, 1983, ch. 412, § 4, 1983 Tenn. Pub. Acts 794, 796 (codified at Tenn. Code Ann. § 53-11-451(a)(6)).

[15]Act of May 23, 1984, ch. 1005, § 4, 1984 Tenn. Pub. Acts 1190, 1192 (codified at Tenn. Code Ann. § 53-11-451(a)(7) (Supp. 1996)).

[16]Act of Apr. 3, 1986, ch. 783, § 1, 1986 Tenn. Pub. Acts 759, 759 (codified at Tenn. Code Ann. § 53-11-451(a)(4)); Act of Apr. 20, 1994, ch. 925, § 2, 1994 Tenn. Pub. Acts 848, 856 (codified at Tenn. Code Ann. § 53-11-451(a)(4)). The preamble of the 1986 Act declared that the federal civil drug forfeiture statute, 21 U.S.C. § 881 (1988 & Supp. 1992), "serves the purpose set out herein and mirrors the intent of the legislature."

[17]The Act's caption described it as "[an Act] to subject to forfeiture all real property used to facilitate a violation of Tennessee Code Annotated, Section 39-6-401, et seq. . . ." *See* Act of Apr. 3, 1986, ch. 783, 1986 Tenn. Pub. Acts 759.

should be subject to forfeiture.[18]  Forfeitures of interests in real property differ from all other civil drug forfeitures in three material respects.  First, the forfeiture cannot occur until the holder of an interest in the real property is convicted of a specified drug-related offense.[19]  Second, the forfeiture procedure is judicial rather than administrative and is commenced by the filing of a "civil forfeiture suit" by a district attorney general or the State Attorney General and Reporter.[20]  Third, the defendants in these civil proceedings have a statutory right to a jury trial.[21]

The final step in the evolution of Tennessee's civil drug forfeiture procedures occurred in 1994 when the General Assembly established a uniform procedure governing the forfeiture of personal property.[22]  This new procedure does not apply to all types of forfeitures, but it does specifically apply to forfeitures of personal property authorized by Tenn. Code Ann. § 53-11-451.  *See* Tenn. Code Ann. § 40-33-201 (Supp. 1996) (amendments effective January 1, 1997).  It will also supplant the procedure in Tenn. Code Ann. § 53-11-201.[23]

Like the former procedure, the new uniform procedure follows an administrative model.  Claimants seeking to recover personal property subject to forfeiture under Tenn. Code Ann. § 53-11-451 must still file a timely claim with the Commissioner of Safety.  Tenn. Code Ann. § 40-33-206 (Supp. 1996).  Claimants are entitled to a contested case hearing conducted in accordance with the Uniform Administrative Procedures Act.  Tenn. Code Ann. § 40-33-209(d) (Supp. 1996).  Persons dissatisfied with a final agency order may seek judicial review by filing a written "notice of review" in either the circuit or chancery courts of Davidson County. Tenn. Code Ann. § 40-33-213 (Supp. 1996).  The

---

[18]Act of Mar. 22, 1990, ch. 774, 1990 Tenn. Pub. Acts 260 (codified at Tenn. Code Ann. § 53-11-452 (Supp. 1996)).

[19]Tenn. Code Ann. § 53-11-452(a)(2).

[20]Tenn. Code Ann. § 53-11-452(d)(1)(A).

[21]Tenn. Code Ann. § 53-11-452(c)(4).

[22]Act of Apr. 20, 1994, ch. 925, 1994 Tenn. Pub. Acts 848 (codified at Tenn. Code Ann. §§ 40-33-201 through -214 (Supp. 1996)).

[23]The Act provides that all existing forfeiture procedures applicable to property covered by the Act are repealed to the extent that they are inconsistent with the new uniform procedure. *See* Act of Apr. 20, 1994, ch. 925, § 3, 1994 Tenn. Pub. Acts 848, 856.

standard of review in these proceedings tracks Tenn. Code Ann. § 4-5-322(h) (Supp. 1996), except that the reviewing court must weigh the evidence using the preponderance of the evidence standard. Tenn. Code Ann. § 40-33-213(a), -213(b) (Supp. 1996). Parties seeking judicial review are not entitled to a jury, Tenn. Code Ann. § 4-5-322(g) (Supp. 1996), and the review is limited to the administrative record except to the extent that Tenn. Code Ann. § 4-5-322(e) and -322(g) permit the introduction of additional evidence.

During all relevant times in this case, the money seized at the 2491 Haischi Street house was subject to forfeiture under Tenn. Code Ann. § 53-11-451(a)(6)(A) or its predecessors. Persons claiming an interest in the money had a statutory right to file a claim with the Department of Safety and to participate in an administrative proceeding during which the state had the burden of proving by a preponderance of the evidence that the money should be forfeited. Persons dissatisfied with the commissioner's decision had the right to seek judicial review in accordance with the Uniform Administrative Procedures Act.[24] This review is based on the administrative record and is conducted by the trial court sitting without a jury.

### III.

#### CONSTITUTIONAL RIGHT TO A JURY TRIAL

The right to a jury trial guaranteed by Tenn. Const. art. I, § 6 is among the most valuable personal rights contained in Tennessee's Declaration of Rights. *Harbison v. Briggs Bros. Paint Mfg. Co.,* 209 Tenn. 534, 540, 354 S.W.2d 464, 467 (1962); *Bank v. Cooper,* 10 Tenn. (2 Yer.) 599, 604 (1831). Every version of our constitution has used the same language to define this right, and thus its contours have remained unchanged for the past 120 years. *State ex rel. Timothy v. Howse,* 134 Tenn. 67, 80-81, 183 S.W. 510, 514 (1915). Tenn. Const. art. I, § 6 guarantees the right to a jury trial as it existed at common law when the

---

[24]The scope and procedure for judicial review of administrative decisions in drug forfeiture cases has been governed by the Uniform Administrative Procedures Act since 1986 when the General Assembly did away with the common-law writ of certiorari proceeding in Tenn. Code Ann. § 53-11-202 that had been used since 1955. Act of Apr. 3, 1986, ch. 738, § 3, 1986 Tenn. Pub. Acts 604, 606.

Tennessee Constitution of 1796 was adopted. *Town of Smyrna v. Ridley,* 730 S.W.2d 318, 321 (Tenn. 1987); *Willard v. State,* 174 Tenn. 642, 645, 130 S.W.2d 99, 100 (1939); *Marler v. Wear,* 117 Tenn. 244, 246, 96 S.W. 447, 448 (1906).

Tenn. Const. art. I, § 6 does not guarantee a jury trial in every sort of case. *State ex rel. Timothy v. Howse,* 134 Tenn. at 81, 183 S.W. at 514. It does not apply to cases that could be tried without a jury prior to 1796, *Newport Hous. Auth. v. Ballard,* 839 S.W.2d 86, 88 (Tenn. 1992); *Memphis & Shelby County Bar Ass'n, Inc. v. Vick,* 40 Tenn. App. 206, 216-17, 290 S.W.2d 871, 876 (1955), and there were many types of cases that could be tried without a jury at that time. *Goddard v. State,* 10 Tenn. (2 Yer.) 96, 99-100 (1825). The common law did not require a jury trial in equitable proceedings,[25] proceedings in which there were no disputed factual issues,[26] proceedings for the punishment of small offenses,[27] or paternity proceedings.[28]

The common law also did not require a trial by jury in "summary proceedings." A summary proceeding is one that is more speedy and informal than a customary legal proceeding. *State ex rel. Mynatt v. King,* 137 Tenn. 17, 29-30, 191 S.W. 352, 355 (1916); *State ex rel. Timothy v. Howse,* 134 Tenn. at 82, 183 S.W. at 514. A summary proceeding has been recognized as permissible in cases involving the ouster of public officials for misconduct,[29] disbarment of lawyers,[30] and election contests.[31] It has also been approved in confiscation

---

[25]*State v. Hartley,* 790 S.W.2d 276, 277-78 (Tenn. 1990); *State ex rel. Balsinger v. Town of Madisonville,* 222 Tenn. 272, 280, 435 S.W.2d 803, 806 (1968).

[26]*State v. Moore,* 206 Tenn. 96, 98, 332 S.W.2d 176, 177 (1960).

[27]*Trigally v. Mayor of Memphis,* 46 Tenn. (6 Cold.) 382, 386-87 (1869).

[28]*Kirkpatrick v. State,* 19 Tenn. (Meigs) 124, 126 (1838); *Goddard v. State,* 10 Tenn. at 99-100.

[29]*State ex rel. Timothy v. Howse,* 134 Tenn. at 82, 183 S.W. at 514-15.

[30]*Davis v. State,* 92 Tenn. 634, 642, 23 S.W. 59, 62 (1893).

[31]*Shields v. McMahan,* 112 Tenn. 1, 5, 81 S.W. 597, 597 (1903), *rev'd on other grounds,* *Brown v. Hows,* 163 Tenn. 138, 155-56, 40 S.W.2d 1017, 1022 (1931).

proceedings involving vehicles used to transport contraband alcoholic beverages[32] and game animals taken out of season.[33]

In addition to the proceedings that did not require a trial by jury prior to 1796, Tenn. Const. art. I, § 6 does not apply to claims or proceedings established after the adoption of the Tennessee Constitution of 1796. Accordingly, the General Assembly is now free to fashion new claims and remedies that do not include the use of a jury. *Plasti-Line, Inc. v. Tennessee Human Rights Comm'n.,* 746 S.W.2d 691, 694 (Tenn. 1988); *State ex rel. Cates v. Standard Oil Co.,* 120 Tenn. 86, 137, 110 S.W. 565, 577 (1908).[34]

## IV.
### JURY TRIALS IN DRUG FORFEITURE CASES

Every state has enacted statutes permitting the confiscation and forfeiture of property used in or derived from the sale of illegal drugs. Most of these statutes follow a judicial model that requires the seizing agency to commence forfeiture proceedings in court. Tennessee is one of five states that follow an administrative model in which forfeiture cases are processed by an administrative agency with the right of judicial review of the agency's decision.[35] The choice between the judicial or administrative model influences the claimant's right to a jury trial.

---

[32]*Casone v. State,* 176 Tenn. 279, 284, 140 S.W.2d 1081, 1083 (1940); *Caneperi v. State,* 169 Tenn. 472, 475-76, 89 S.W.2d 164, 165 (1936).

[33]*State v. McCrary,* 205 Tenn. 306, 311, 326 S.W.2d 473, 475 (1959).

[34]The federal courts have reached the same conclusion with regard to the guarantee of a jury trial in U. S. Const. amend. VII. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 48-49, 57 S. Ct. 615, 629 (1937); *United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 458 (7th Cir. 1980).

[35]In addition to Tennessee, Hawaii, New Hampshire, Rhode Island, and Washington have established an administrative process for disposing of some types of drug forfeiture cases. *See* Haw. Rev. Stat. § 712A-10 (Supp. 1992) (administrative forfeiture hearings before the attorney general concerning seized property whose value does not exceed $100,000); N.H. Rev. Stat. Ann. § 318-B:17-d (1995) (administrative forfeiture hearings before the Department of Justice with regard to seized property whose value does not exceed $75,000); R.I. Gen. Laws § 21-28-5.04.2(h) (1989) (administrative forfeiture hearings before the attorney general concerning seized property whose value does not exceed $20,000); Wash. Rev. Code Ann. § 69.50.505(e) (West Supp. 1996) (administrative hearings conducted before the chief law enforcement officer of the seizing agency).

Many states have enacted forfeiture statutes that not only establish the right to recover seized property but also proscribe the procedure for asserting this right. In these jurisdictions, the statute itself frequently states whether or not the claimant may request a trial by jury.[36] However, other states and the federal government have simply created a new statutory right to sue to recover confiscated property without providing a new procedure for asserting the right. When a statute does not provide a specific remedy, the parties are left to their common-law remedies. In these circumstances, the prevailing weight of authority is that the claimant has a right to a jury trial even if the confiscation statute does not specifically require one.[37] Several courts, however, have reached different results.[38]

We need not enter the debate concerning whether persons seeking to recover seized property had a right at common law to have a jury consider their claim because the General Assembly has created a statutory forfeiture procedure that does not include the use of a jury. The Tennessee Constitution vests in the General Assembly the power to enact legislation to protect the health, safety, and welfare of our citizens, and Tenn. Const. art. I, § 6 does not limit the General Assembly's power to establish new claims and remedies that do not require a trial

---

[36]Forfeiture statutes specifically dispensing with a jury include: Alaska Stat. § 17.30.116(c) (Michie 1983); Ariz. Rev. Stat. Ann. § 13-4311(D) (Supp. 1996); Colo.Rev. Stat. § 16-13-505(6) (Supp. 1996); Conn. Gen. Stat. Ann. § 54-36h(b) (West 1994); Ga. Code Ann. § 16-13-49(o)(5) (1996); Idaho Code § 37-2744(d)(1)(3)(D) (1994); Kan. Stat. Ann. § 60-4113(g) (1994); Me. Rev. Stat. Ann. tit. 15, § 5822(4) (West Supp.) (1995); N.H. Rev. Stat. Ann. § 318-B:17-b (IV)(e) (1995); Utah Code Ann. § 58-37-13(9)(g) (Supp. 1996); Vt. Stat. Ann. tit.18, § 4244(d) (Supp. 1995). Forfeiture statutes specifically providing for a jury trial include: Cal. Health & Safety Code § 11488.5(c)(2) (West Supp. 1996); Fla. Stat. Ann. § 932.704(2) (West Supp. 1996); N.Y. Penal Law § 480.10 (Supp. 1996); R.I. Gen. Laws § 21-28-5.04.2(j) (1989); Va. Code Ann. § 19.2-386.10 (Michie 1995); W. Va. Code § 60A-7-705 (1992).

[37]*United States v. One 1976 Mercedes Benz 280S*, 618 F.2d at 458; *People v. One 1941 Chevrolet Coupe,* 231 P.2d 832, 844 (Cal. 1951); *In re Forfeiture of 1978 Chevrolet Van,* 493 So.2d 433, 436 (Fla. 1986); *Idaho Dep't of Law Enforcement ex rel. Code v. Free,* 885 P.2d 381, 384-85 (Idaho 1994); *People ex rel. O'Malley v. 6323 N. LaCrosse Ave.,* 634 N.E.2d 743, 746 (Ill. 1994); *Commonwealth v. One 1972 Chevrolet Van,* 431 N.E.2d 209, 209 (Mass. 1982); *Colon v. Lisk,* 47 N.W. 302, 303 (N.Y. 1897); *Keeter v. State ex rel. Saye,* 198 P. 866, 870 (Okla. 1921); *State v. 1920 Studebaker Touring Car,* 251 P. 701, 704 (Or. 1926); *Commonwealth v. One (1) 1984 Z-28 Camaro Coupe,* 610 A.2d 36, 39 (Pa. 1992); *Medlock v. 1985 Ford F-150 Pick Up,* 417 S.E.2d 85, 87 (S.C. 1992).

[38]*Swails v. State,* 431 S.E.2d 101, 103 (Ga. 1993); *State v. Clark,* 670 So.2d 493, 501 (La. Ct. App. 1996); *In re Forfeiture of $1,159,420,* 486 N.W.2d 326, 337 (Mich. Ct. App. 1992); *State v. One 1921 Cadillac Touring Car,* 195 N.W. 778, 780 (Minn. 1923); *State v. Morris,* 405 S.E.2d 351, 352-53 (N.C. Ct. App. 1991).

by jury. Accordingly, Tennessee's administrative forfeiture statutes do not run afoul of Tenn. Const. art. I, § 6.

## V.
### DUE PROCESS CLAIMS

Mr. Jones also challenges the commissioner's order on due process grounds. He asserts that the administrative proceedings were unfair because they were presided over by the Commissioner of Safety. He also asserts that the delay between the seizure and the administrative hearings deprived him of his right to a prompt hearing at a meaningful time. We find these claims to be without merit.

## A.
### PECUNIARY BIAS OF THE COMMISSIONER OF SAFETY

Parties to administrative proceedings, like parties to judicial proceedings, are entitled to a neutral decision-maker. *Cooper v. Williamson County Bd. of Educ.,* 803 S.W.2d 200, 202 (Tenn. 1990); *Ogrodowcyk v. Tennessee Bd. for Licensing Health Care Facilities,* 886 S.W.2d 246, 252-53 (Tenn. Ct. App. 1994) (Cantrell, J., concurring). Accordingly, members of administrative agencies are subject to the same disqualification standards that apply to judges when they are performing adjudicatory functions. *Tennessee Cable Television Ass'n v. Tennessee Pub. Serv. Comm'n,* 844 S.W.2d 151, 164-65 (Tenn. Ct. App. 1992); Tenn. Code Ann. § 4-5-302(a) (1991).

Judges cannot have a personal financial stake in the proceedings before them. Tenn. S. Ct. R.10, Canon 3(C)(1)(c). Accordingly, judicial officers must disqualify themselves if their decision affects their personal compensation. *Connally v. Georgia,* 429 U.S. 245, 250, 97 S. Ct. 546, 548 (1977); *In re Dender,* 571 S.W.2d 491, 492 (Tenn. 1978). This principle applies to administrative decision-makers. *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S. Ct. 1689, 1698 (1973); *Ogrodowcyk v. Tennessee Bd. for Licensing Health Care Facilities,* 886 S.W.2d at 253.

This record contains no evidence that the Commissioner of Safety has a direct, personal pecuniary interest in the outcome of forfeiture hearings like the one involved in this case. His decisions do not affect his personal compensation. Forfeited property seized by a state agency is sold at a public sale by the Commissioner of General Services,[39] and the proceeds of the sale are deposited in the state treasury subject to being allocated back to the Department of Safety to be used to enforce the laws regulating narcotic drugs and marijuana.[40] The Department of Safety does not have access to the proceeds from the sale of property seized by the Tennessee Bureau of Investigation or local law enforcement agencies.[41]

Administrative decision-makers are presumed to carry out their duties with honesty and integrity. *Cooper v. Williamson County Bd. of Educ.,* 803 S.W.2d at 203; *Tennessee Cable Television Ass'n v. Tennessee Pub. Serv. Comm'n,* 844 S.W.2d at 165. Thus, the party claiming bias bears the burden of proving the grounds for disqualification. *Gay v. City of Somerville,* 878 S.W.2d 124, 127 (Tenn. Ct. App. 1994). Neither the commissioner nor his department could have benefitted from this forfeiture proceeding since the money at issue was seized by a local law enforcement agency. Accordingly, Mr. Jones has failed to substantiate his bias claim with either legal authority or facts.

## B.

### DELAY BETWEEN THE SEIZURE AND THE HEARING

Mr. Jones asserts that the 41-month delay between the seizure of the money and the hearing on his claim violated his constitutional right to a hearing at a meaningful time and his statutory right to a prompt hearing. He argues that the delay is entirely attributable to the government and that he was prejudiced because two key witnesses became unavailable during this period. We have concluded that the delay between the seizure and the hearing is not of constitutional significance.

---

[39]Tenn. Code Ann. § 53-11-201(b)(1) (Supp. 1996).

[40]Tenn. Code Ann. § 53-11-204 (1991).

[41]Tenn. Code Ann. § 53-11-451(d)(4).

This case presents the first opportunity for this court to consider the claim that a delay between the seizure of property and the forfeiture hearing violated a claimant's right to a hearing at a meaningful time under the Fifth and Fourteenth Amendments to the United States Constitution and the Due Process Clause in Tenn. Const. art. I, § 8. Since the Tennessee Supreme Court has found the scope of the due process protections in the Tennessee Constitution to be similar to those in the United States Constitution, *Doe v. Norris,* 751 S.W.2d 834, 838 (Tenn. 1988); *State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779, 786 (Tenn. 1980), we will look to federal precedents for helpful guidance.

The United States Supreme Court has recognized that delay in instituting civil forfeiture proceedings can violate a claimant's due process rights. Drawing from its speedy trial jurisprudence, the Court determined that forfeiture delay claims require an examination of the facts of each case in light of the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the claimant's assertion of his or her rights, and (4) the prejudice to the claimant caused by the delay. *United States v. Eight Thousand Eight Hundred and Fifty Dollars in United States Currency,* 461 U.S. 555, 564, 103 S. Ct. 2005, 2012 (1983). The Tennessee Supreme Court has adopted essentially the same test to determine whether pre-accusatorial delay violates due process. *State v. Gray,* 917 S.W.2d 668, 673 (Tenn. 1996) (holding that the courts must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused).

Of these factors, the most critical is the prejudice to the accused. *State v. Hallock,* 875 S.W.2d 285, 289 (Tenn. Crim. App. 1993); *Tillery v. State,* 565 S.W.2d 509, 510 (Tenn. Crim. App. 1978). For the purposes of the inquiry, the courts are chiefly concerned with the prejudice to a party's ability to marshal its evidence and to present its case. *Barker v. Wingo,* 407 U.S. 514, 532, 92 S. Ct. 2182, 2193 (1972); *State v. Vance,* 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994). A delay will be considered constitutionally harmless without a clear showing of actual prejudice. *State v. Hallock,* 875 S.W.2d at 289.

The 41-month delay between the seizure of the money and the forfeiture hearing, while extremely long, cannot be solely attributable to the law enforcement authorities. Mr. Jones did not file a timely claim for the return of the money, and his standing to claim the money was contested in the courts. The courts did not finally resolve Mr. Jones's right to claim the money until April 1992. We cannot fault the commissioner for not holding the forfeiture hearing while Mr. Jones's right to claim the money was being litigated. The commissioner held the administrative hearing on Mr. Jones's claim within six months after this court decided that he should be given an opportunity to claim the seized money.[42] Thus, the facts provide no basis for concluding that the commissioner intentionally delayed the hearing to gain a tactical advantage over Mr. Jones.

Prejudice is evident when witnesses die or disappear while a hearing is delayed. *Barker v. Wingo,* 407 U.S. at 532, 92 S. Ct. at 2193. However, persons seeking to prove that a delay impaired their ability to present favorable evidence must demonstrate actual prejudice by offering some proof of the witness's expected testimony and of their efforts to assure that these witnesses would attend the hearing. *State v. Perkins,* 713 S.W.2d 689, 692 (Tenn. Crim. App. 1986); *Woodson v. State,* 579 S.W.2d 893, 897 (Tenn. Crim. App. 1978); *Farr v. State,* 506 S.W.2d 811, 814 (Tenn. Crim. App. 1974).

Mr. Jones asserts that two key witnesses, Halbert Brown and Kathryn Smith, became unavailable because of the delay. Mr. Brown was living at the Haischi Street house at the time of the seizure, and Ms. Smith was Mr. Jones's former girlfriend. Mr. Jones intended to use these witnesses to prove that he was also residing at 2491 Haischi Street at the time of the seizure. Mr. Jones has not satisfactorily demonstrated that the delay prevented him from calling these witnesses or that their testimony would have been of material assistance.

Mr. Jones did not complain about his inability to call these witness after this case was remanded for a hearing before the commissioner. In June 1992, he represented in a brief that his witnesses had not disappeared. One month later, his

---

[42]The hearing would have been held two months earlier in August 1992 had Mr. Jones not failed to appear at a scheduled deposition.

lawyer did not include the absence or disappearance of witnesses among the problems confronting him during an argument to the administrative law judge concerning how the delay had prejudiced his client. Thus, we can only conclude that these witnesses were available to Mr. Jones as late as one month before the original date of the forfeiture hearing.

Mr. Jones has never come forward with an explanation of either Mr. Brown's
or Ms. Smith's disappearance between July and October 1992. In fact, Ms. Smith had not disappeared at all because Mr. Jones announced at the hearing that he knew where she was and that she was available for a telephone deposition. He never explained the steps he had taken to assure her attendance at the hearing. Likewise, he never described the steps he had taken to assure Mr. Brown's attendance at the hearing. The department had, however, attempted unsuccessfully to subpoena Mr. Brown.

Mr. Jones also failed to demonstrate how Mr. Brown's and Ms. Smith's testimony would have been helpful to him. He intended to call them solely for the purpose of substantiating his claim that he was also living at 2491 Haischi Street in May 1989 when the money was seized. He has never indicated that either of these witnesses could have provided testimony concerning the other necessary element of his claim - that he owned the money he was seeking to recover. In fact, the record shows affirmatively that these two witnesses would have been of no assistance on this issue. Mr. Brown told the authorities at the time of the seizure that he did not know who the money belonged to, and Mr. Jones testified at the October 1992 hearing that Ms. Smith did not know how much money he had.

The delay between the seizure of the money and the forfeiture hearing was, for the most part, caused by the protracted litigation over Mr. Jones's right to claim the seized money. Mr. Jones has not convinced us that this delay seriously undermined his ability to present his claim. Accordingly, we have concluded that Mr. Jones was provided a hearing on his claim at a meaningful time under the circumstances.

# VI.

## THE ADEQUACY OF THE SUPPORTING PROOF

Finally, Mr. Jones asserts that the commissioner's decision is not supported by substantial and material evidence. He argues that the commissioner's financial bias caused him to overlook the overwhelming evidence establishing Mr. Jones's ownership of the seized money. Having already resolved the allegations concerning the commissioner's alleged bias, we now turn to the evidentiary support for the commissioner's decision.

## A.

Our review of the commissioner's decision is governed by the Uniform Administrative Procedures Act. Tenn. Code Ann. § 4-5-322(h)(5) (Supp. 1996) requires the courts to reverse a final administrative decision that is "unsupported by evidence which is both substantial and material in the light of the entire record." We do not reweigh the evidence under this standard. *Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.,* 907 S.W.2d 807, 810 (Tenn. 1995); *Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 667 (Tenn. 1977). Rather, we review the record to determine whether the administrative decision is based on "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. v. State Bd. of Equalization,* 682 S.W.2d 196, 199 (Tenn. 1984).

An agency's decision may be supported by substantial and material evidence even when the evidence could support another conclusion. *Hughes v. Board of Comm'rs,* 204 Tenn. 298, 305, 319 S.W.2d 481, 484 (1958); *Estate of Street v. State Bd. of Equalization,* 812 S.W.2d 583, 587 (Tenn. Ct. App. 1990). Thus, the possibility of drawing inconsistent conclusions from the proof does not prevent an agency's decision from being supported by substantial and material evidence. *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S. Ct. 1018, 1026 (1966); 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative*

*Law Treatise* § 11.2 at 177 (3d ed. 1994). The courts need only reject an agency's factual findings when, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. 5 Jacob A. Stein, *Administrative Law* § 51.02, at 51-61 (1992).

The substantial and material evidence standard in Tenn. Code Ann. § 4-5-322(h)(5) still requires a searching and careful inquiry into the record and the basis for the administrative decision. *Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.,* 907 S.W.2d at 810; *Wayne County v. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). This is especially true in forfeiture proceedings because the facts must fall within both the spirit and the letter of the law before a person can be deprived of his or her property. *See Biggs v. State,* 207 Tenn. 603, 608, 341 S.W.2d 737, 740 (1960); *Hays v. Montague,* 860 S.W.2d 403, 406 (Tenn. Ct. App. 1993).

## B.

The commissioner determined that Mr. Jones failed to prove that he owned the money seized at 2491 Haischi Street. The commissioner also found that Mr. Jones was not a resident of the house. A claimant, however, is not required to prove residence but rather to prove an innocent interest in the seized property. *See* Tenn. Code Ann. § 53-11-201(f). Thus, a conclusion that Mr. Jones did not reside in the house does not, by itself, defeat Mr. Jones's claim, but it could tend to disprove Mr. Jones's claim that he owned the money found in the house.

Mr. Jones's description of how the money was packaged differed from the testimony of the officers who seized the money. He testified that he placed loose money in the hole behind the entertainment center and that very little of the money was packaged in sandwich bags. He also testified that the money was wrapped in $1,000 bundles. The officers testified that all the money found behind the entertainment center was separately wrapped in sandwich bags and that each bag contained a $2,000 roll of bills. They also testified that all the sandwich bags full of money were contained in a paper grocery sack. The omissions and inconsistencies in Mr. Jones's testimony concerning the money provided the

commissioner with an appropriate basis to find that Mr. Jones had not proved that the money was his.

Mr. Jones's claim is also undermined by his sketchy proof concerning how he was able to accumulate $45,000 and the inconclusive testimony of his spending and living habits. He testified that the money represented his life savings and that he had obtain the money through full-time work, moonlighting, and gambling. He also testified that he had stopped using banks during his divorce. The only documented proof of Mr. Jones's income was a 1989 W-2 form showing that he had earned $18,434 that year.

Mr. Jones also claimed that he paid his child support through a payroll deduction. However, the available records indicated that he had made only thirteen child support payments between 1978 and 1988 and that his child support was $1,709 in arrears. While his former girlfriend and his first cousin testified that Mr. Jones loaned them money, neither of them knew where he got the money, how much money he had, or where he kept his money. Mr. Jones asserted that Mr. Brown was the only other person who knew about his money and its hiding place, but Mr. Brown told the officers who found the money that he did not know who it belonged to. Mr. Jones's inability to describe the money accurately and to prove that he had the means to accumulate approximately $45,000 support the commissioner's decision that Mr. Jones had not proved that the seized money was his. After an examination of the entire record, we cannot conclude that a reasonable mind would necessarily come to a different conclusion.

We need not determine in this case whether the record contains substantial and material proof that the seized money was the proceeds of illegal drug trafficking. Tenn. Code Ann. § 53-11-201(f) does not permit the commissioner to grant a claim for seized property until the claimant proves an innocent interest in the seized property. Mr. Jones did not substantiate his claim that he owned the seized money. In the absence of any other valid claim of ownership, the money may be summarily forfeited to the seizing agency without the necessity of presenting proof that it was the proceeds of illegal drug trafficking.

## VII.

We affirm the judgment of the trial court affirming the commissioner's order that the $45,445 in currency seized at 2491 Haischi Street on May 26, 1989 should be forfeited in accordance with Tenn. Code Ann. § 53-11-451(a)(6)(A). We also remand the case for whatever further proceedings may be required and tax the costs of this appeal to Freddie Lee Jones and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
SAMUEL L. LEWIS, JUDGE