Freeman M. **COOPER**, Appellant,

v.

**WILLIAMSON COUNTY BOARD OF EDUCATION**, Appellee.

Supreme Court of Tennessee, at Nashville.

Sept. 17, 1990.

Charles Hampton White, Richard L. Colbert, Cornelius & Collins, Nashville, for appellant.

Robert G. Wheeler, Jr., Goodlettsville, for appellee.

## OPINION

COOPER, Justice.

This is a direct appeal, under T.C.A. § 49–5–513(i), of a judgment of the Chancery Court of Williamson County terminating "Freeman M. Cooper's services as a teacher and as a principal of Fairview High School." Appellant insists the chancellor failed to review the evidence *de novo* as directed in this Court's opinion deciding issues in an earlier appeal of this case. *See Cooper v. Williamson County Board of Education*, 746 S.W.2d 176 (Tenn.1987). Appellant also insists that the evidence preponderates against the chancellor's findings, that the findings do not justify his discharge as a tenured teacher and that the judgment deprives him of a property right without due process of law. We find no merit in any of the issues and, accordingly, affirm the judgment of the trial court.

Freeman Cooper was employed as a teacher in the Williamson County School System in 1965. In 1984, as the result of a judgment in the United States District

Court for the Middle District of Tennessee, Cooper was appointed principal of Fairview High School. Kenneth Fleming, who assumed the office of Superintendent of Schools on September 1, 1984, soon became dissatisfied with Mr. Cooper's work performance and brought charges against Mr. Cooper before the Williamson County Board of Education. After a lengthy hearing, the Board dismissed the charges, directed Fleming to work with Cooper and that the two of them jointly prepare a Management Action Plan for the administration of Fairview High School, which identified the strengths and weaknesses of the administration of the school. The plan was due in two weeks and there was to be a written update every two months. From that time on, Mr. Cooper and Mr. Fleming recorded their meetings, or wrote summaries of conversations immediately after talking with each other. These tapes and summaries, which are in the record, formed the bases of reports required by the Board. They also provide a basis to refresh memories in the numerous instances when Mr. Fleming and Mr. Cooper differ as to what had occurred in their meetings.

In December, 1985, Mr. Fleming again brought charges against Mr. Cooper. Essentially, Mr. Cooper was charged with insubordination, incompetency, inefficiency and neglect of duties. Seventeen specific incidents were cited.[1] Following an exhaustive hearing on the charges, the Board found the specifications of fact in charges 1–6, 8, 12, and 14–17 were true and established instances of insubordination, incompetence, inefficiency and neglect of duty. The Board dismissed Mr. Cooper as an employee of the school system on February 7, 1986.

Cooper timely filed a petition in the chancery court to obtain judicial review of the Board's decision pursuant to T.C.A. § 49–5–513. Comparing his function in providing a de novo review of the Board's decision to that of the Court of Appeals in reviewing the findings of a trial court in a non-jury case, the chancellor limited his review to an examination of the evidence presented to the Board in determining whether the evidence preponderated in favor of or against the determination of the Board. On finding that the evidence preponderated in favor of the Board's action, the chancellor entered a decree dismissing the action brought by Mr. Cooper.

On appeal, this Court held that the scope of review by the chancellor was too narrow, that it deprived Mr. Cooper of his statutory right to a hearing de novo under T.C.A. § 49–5–513(i), and vacated that part of the chancellor's decree dealing with the propriety of plaintiff's dismissal. The Court then remanded the case for a new hearing on the merits, with both parties having the right to introduce additional, noncumulative evidence on the issue of the propriety of the dismissal of Mr. Cooper from employment by the Williamson County School System. This Court affirmed the chancellor's findings that the Board had not violated the Tennessee Open Meetings Act, T.C.A. §§ 8–44–101, in discussing with its counsel legal ramifications of bringing charges against Mr. Cooper, or in discussing a settlement offer made by Mr. Cooper. This Court also considered Mr. Cooper's charge that the Board had acted in an arbitrary, capricious, and unlawful manner in hearing the charges against him and in dismissing him as an employee, and noted that:

> Given the availability of a hearing de novo in these cases in which the Chancellor redetermines the merits of the charges and decides whether a board's actions were justified by the evidence, we do not think that whether a board acted arbitrarily or capriciously has any relevance to the status of the teacher because a hearing de novo in the Chancery Court readjudicates the matter in a neutral forum, completely eliminating any arbitrariness or capriciousness in the board's decision, which is not afforded a presumption of correctness. 746 S.W.2d 176, 183–84.

On remand, without objection of the parties, the chancellor declined to consider charges against Mr. Cooper not proven in

---

1. See Appendix for charges and specifications filed against Mr. Cooper.

the initial hearing before the Board, leaving viable only those charges against Mr. Cooper that were the bases of his dismissal. As to these charges, the chancellor permitted the introduction of evidence, without regard to whether the evidence was repetitive or cumulative to evidence introduced in the Board's hearing. The only limitation of the admission of evidence was that it be relevant to a pending charge. As a consequence, the chancellor had for consideration, the evidence of the hearing before the Board, the evidence introduced in a contempt proceeding filed by Mr. Cooper against the Board in the United States District Court, and evidence introduced in the *de novo* hearing. The chancellor found from this that Mr. Cooper was guilty of the charges of insubordination, inefficiency, incompetence, and negligence, and that the Board was justified in dismissing Mr. Cooper as a tenured employee of the Williamson County School System.

Noting that the chancellor's findings on each of the controverted charges were the same as the Board's, and that no mention was made in the chancellor's memorandum opinion of rebutting evidence, plaintiff reasons that the chancellor did not try the case *de novo* as directed by this Court in the earlier appeal, but "plainly ignored the evidence, failed to make his own independent findings and conclusions and simply rubber-stamped the Board's decision, even though the evidence plainly weighed heavily against the decision." This argument, to have any justification, is dependent upon a finding that the evidence preponderates against the chancellor's findings; otherwise, the argument is a non sequitur. If properly considered, it is not unusual that two triers of facts will arrive at the same conclusion from the same evidence. And, from our review of the evidence, we are convinced that the findings of the chancellor, though the same as the Board, are in full accord with the preponderance of the evidence.

■ T.C.A. § 49–5–511(a)(2), speaking to dismissal or suspension of tenured teachers, specifically provides that a teacher may be dismissed for incompetence, or inefficiency, or neglect of duty, or unprofessional conduct; or insubordination. The chancellor found, and we agree, that the charges proven show insubordination, neglect of duty, incompetency, and inefficiency on the part of Mr. Cooper, as those terms are defined in T.C.A. § 49–5–501.

■ Plaintiff argues strenuously that the charges of which he stands convicted reflect only "upon his appointment as principal of Fairview High School and his attempts to fulfill that appointment," and should not be the basis of his dismissal as a tenured teacher. We recognize that his dismissal as a school principal does not necessarily require his termination as a tenured teacher. *See Fleming v. Wade,* 568 S.W.2d 287, 289 (Tenn.1978). But where, as here, the charges reflect adversely on plaintiff's ability to subject himself to the authority of superiors, and on his ability to perform work assignments in an efficient and competent manner, the charges properly can and should be the bases of his dismissal, both as a principal and as a teacher.

■ Plaintiff also argues that in these proceedings, he was deprived of his right to continued employment without due process in that he was not afforded a meaningful pretermination hearing. Plaintiff argues that the superintendent of schools, who brought charges against plaintiff at the instigation of the school board, and the school board, who tried the charges, were biased. It is axiomatic that due process requires the opportunity of the party charged to be heard at a meaningful time and in a meaningful manner, before an impartial tribunal. *See Hortonville Joint School District No. 1. v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976); *Mathews v. Eldridge* 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976); *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1463–64, 43 L.Ed.2d 712 (1975). But the mere fact that both investigative and adjudicative functions have been granted to an administrative body, in this case the school board, does not of itself create an unconstitutional risk of bias in an administrative

adjudication. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (1975), wherein the Court pointed out that

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a ... difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators....

Further, as noted in the earlier appeal of this case,

> Given the availability of a hearing *de novo* in [teacher tenure cases], in which the Chancellor redetermines the merits of the charges and decides whether a board's actions were justified by the evidence, we do not think that whether a board acted arbitrarily or capriciously has any relevance to the status of the teacher because a hearing *de novo* in the Chancery Court readjudicates the matter in a neutral forum, completely eliminating any arbitrariness or capriciousness in the board's decision, which is not afforded a presumption of correctness. Prejudice or bias would be relevant to impeach a board member who testified but any arbitrariness or capriciousness on the part of the board is cured by the hearing *de novo. Cooper v. Williamson County Board of Education,* 746 S.W.2d 176, 183–84.

■ In our opinion, without question, plaintiff had a meaningful hearing in a meaningful manner before an impartial tribunal in this case, both before the Board and in the *de novo* hearing before the chancellor and there was no violation of his right to due process.

Judgment of the trial court is affirmed. Costs of the appeal will be paid by plaintiff and his surety.

DROWOTA, C.J., and FONES, HARBISON and O'BRIEN, JJ., concur.

### APPENDIX

I, Kenneth L. Fleming, Superintendent of Williamson County Schools, do hereby charge Freeman M. Cooper, Principal of Fairview High School, with (A) insubordination, (B) incompetence, (C) inefficiency, (D) neglect of duty, and (E) conduct unbecoming a member of the teaching profession, all defined in T.C.A. § 49–5–501. These charges, all based upon incidents occurring after April 1, 1985, require the dismissal of Freeman M. Cooper as a teacher as defined in T.C.A. § 49–5–501.

A description of the evidence to support these charges follows.

1. Mr. Cooper has continually failed to comply in a timely manner with generally accepted rules of conduct regarding sick leave: Notification of illness to the employer, provision of a doctor's statement for extended illness, and provision of some indication of when the employee expects to return to work.

a. During extended periods of consecutive absences in April through June and in October and November, Mr. Cooper failed in a timely manner to provide adequate information regarding his illness, a doctor's statement, or a date of intent to return to work.

b. Superintendent Fleming asked Mr. Cooper on November 6 about whether he would be at work the next day, and Chairman Naron asked the same question of Mr. Cooper's doctor on night of November 6. Neither Mr. Cooper nor his doctor would provide any information as to whether Mr. Cooper would report to work the next day. Mr. Cooper failed to appear on November 7.

c. Mr. Cooper reappeared at work on November 18, having been absent since November 7 and having given no prior notice of when he would return. (A, B, C, D Note: Letters which follow each specification identify the statutory charges supported by the specification.)

2. On November 6, Superintendent Fleming questioned Mr. Cooper about the nature of his ailment, but Mr. Cooper refused to provide direct or complete answers. He continually responded to any questions concerning his absences by stating only that his illness was not contagious

and that the superintendent would receive a report from his doctor. (A, B, C, D)

3. Mr. Cooper continually failed to comply in a timely and efficient manner in the development of the Management Action Plan ordered by the Board on April 1.

Mr. Cooper promised on April 5 to provide by April 10 his written suggestions for the plan. On April 10 Mr. Cooper stated that the suggestions would be ready on April 11. Two days later he reported that he would submit them by the first of the next week. On April 15, Mr. Cooper's attorney stated that the draft would be submitted by April 24. On April 29, Mr. Cooper stated he would provide them within a few days. His suggestions were received on May 13.

Not until early June did Mr. Cooper agree to schedule a meeting with Superintendent Fleming to continue work on the plan. In response to requests from Superintendent Fleming on July 10 and July 19 urging Mr. Cooper to work with him to finalize the plan, Mr. Cooper notified Superintendent Fleming on July 25 of his understanding that the first phase of the plan had been finalized. However, Mr. Cooper then refused to sign the draft of the plan, which he had received on July 17, to certify that the plan had been mutually developed and that agreement had been reached. After minor changes, Mr. Cooper signed the plan on August 5. (A, B, C, D)

4. In October and November, Mr. Cooper violated Section I, B, 4, d, of the Management Action Plan which requires Mr. Cooper to have provided the Superintendent by October 14 a complete written report of his progress on the plan.

Reminders were sent to Mr. Cooper on October 14, October 22, October 30 and November 4 stressing the need for his written report and the need to meet with Superintendent Fleming to discuss it prior to its presentation to the Board; however, not until November 27 (after he had read it to the Board on November 25) did Mr. Cooper send what he now claims to have been his report on the plan. On November 6, Mr. Cooper had represented to Superintendent Fleming that his press release to the *Tennessean* constituted his report on the plan. (A, B, C, D, E)

5. Mr. Cooper violated the line organization provisions described in the introduction to the Management Action Plan when he personally delivered to the offices of the Nashville *Tennessean* on October 26 a news release and granted an interview regarding his complaints about the superintendent's treatment of him concerning the plan. (A, B, C, D)

6. On August 7, August 20, September 23, September 24, October 9, October 18, October 22, October 25, November 6, November 11, and November 18, Mr. Cooper was directed by Superintendent Fleming to provide to the Fairview High School faculty and staff copies of the Management Action Plan, because several of its provisions apply to them. During a grievance meeting on October 8, Mr. Cooper acknowledged that he had promised to comply, but he stressed that he had not "promised to do it tomorrow." He distributed copies of the plan to his faculty on November 19. (A, B, C, D)

7. On October 8, Mr. Cooper cited his receipt of three to ten anonymous 'phone calls as a basis for accusing one of his secretaries, Robbie Hirsbrunner, who had filed a complaint against him, of being disloyal. This violates Section I, B, 3, c, of the plan which requires that Mr. Cooper act on complaints against his staff members only when the complainant is willing to give his name. (A, B, C, D)

8. On October 9, Mr. Cooper repeatedly refused to state whether he would comply with Superintendent Fleming's directive that Mr. Cooper remove his letter of reprimand from teacher Jan Daugherty's file and that he not allow the letter or her grievance regarding it to influence his evaluation of her performance as a teacher.

On October 10, Superintendent Fleming directed Mr. Cooper to give written notice by October 16 of whether he intended to comply with the October 9 directive. Mr. Cooper failed to reply, and Superintendent Fleming reminded him of the original directive on October 22. On October 25 Mr.

Cooper stated that he had not decided whether to comply with directive but that he would inform the Superintendent's office within ten days. On November 6, Mr. Cooper said he still had not decided whether to comply with the directive. On November 18, Mr. Cooper stated that he had removed the letter of reprimand from the teacher's file and that he had never planned to make the letter a factor in her evaluation. Mr. Cooper directly refused on November 18 to answer the superintendent's question of why Mr. Cooper had failed to tell him from the beginning that he had never intended to make the letter a factor in Mrs. Daugherty's evaluation. (A, B, C, D)

9. Mr. Cooper again violated Section I, B. 4, of the Management Action Plan when on September 16 he responded to Superintendent Fleming's September 6 offer to help him with the Jan Daugherty grievance by stating that he was not aware that he needed to seek the Superintendent's help with such matters. (A, B, C, D)

10. Mr. Cooper promised on July 24 to comply with a directive that he supply to Doug Crosier a copy of a tape recording Mr. Cooper had made of his conference with Mr. Crosier. Mr. Cooper stated at a Board meeting on August 5 that he had destroyed the tape. (A, B, C, D, E)

11. On August 5, Mr. Cooper violated Section I, B, 3, e, of the plan which emphasizes that Mr. Cooper provide specific written reasons for any staff transfer recommendations. That emphasis is consistent with provisions of newly adopted revisions in Article XV of the WCEA/WCBE contract concerning involuntary transfers of professional personnel.

On May 13, Mr. Cooper submitted transfer recommendations which were not accompanied by specific reasons. Mr. Cooper reiterated his transfer recommendations on July 17, without specific reasons for each. On July 19 another directive was sent; however, Mr. Cooper replied on July 22, again without specific reasons. During a Central Office meeting on July 24 he specifically stated he would not comply with the directive that he provide specific reasons for his staff transfer recommendations. (A, B, C, D)

12. During a meeting in the Superintendent's office on April 5, Mr. Cooper repeatedly refused to state whether he would comply with the directive that he recommend someone other than Roosevelt Harvey for a math vacancy at his school. (A, B, C, D)

13. Mr. Cooper refused on October 11 to schedule with Superintendent Fleming his initial evaluation conference. Superintendent Fleming communicated with him on October 18, October 22, October 25, November 6 and November 11 seeking unsuccessfully to schedule the evaluation conference. Mr. Cooper finally agreed to November 13, but his absences prevented the meeting until November 19. (A, B, C, D)

14. Mr. Cooper called his secretary, Robbie Hirsbrunner, into his office on August 30 and accused her of insubordination for having said within the hearing of a parent volunteer that he should let school office personnel know when he would be away from school. He also said her not putting "Mr." in front of his name on telephone notes showed insubordination and disrespect.

Upon receiving the copy Mrs. Hirsbrunner provided him of the complaint she filed with the Superintendent regarding this conversation, Mr. Cooper berated her saying that her filing a complaint showed disloyalty. (B, C)

15. Mr. Cooper, on August 26, issued a letter of reprimand to Jan Daugherty for her having left school early the previous day. In leaving she had fully complied with the handbook Mr. Cooper issued to his teachers this year. Mr. Cooper did not discuss with Mrs. Daugherty the incident leading to the reprimand prior to issuing the letter. Furthermore, he made no attempt to resolve at the school level the grievance she filed about the letter. (B, C, D)

16. From April 1 through November 15, Mr. Cooper was absent from duty 67 work days. Based on the following factors, there is reasonable cause to conclude that

Mr. Cooper's many absences were unnecessary.

(a) During his first series of consecutive absences, April 10 through June 5, Mr. Cooper never provided his employer with any information as to the nature of his illness. His doctor's letter states only that his doctor had ordered him to remain away from work.

(b) On June 6 Mr. Cooper violated his doctor's instructions not to return to work until after a reexamination. Reporting to a workshop at Brentwood High School on June 6, and all day every day for five consecutive work days was necessary if Mr. Cooper was to receive a $1,000 Career Ladder supplement from the State.

(c) On November 6, Mr. Cooper repeatedly refused to provide Superintendent Fleming any information about the nature of his illness other than that his doctor would send a report and that he had nothing contagious.

(d) Mr. Cooper's doctor's letter, ultimately provided by Dr. Paul Alexander on November 16, states that all of Mr. Cooper's test results were within normal limits. The only basis Dr. Alexander cites for having ordered Mr. Cooper to remain off the job was Mr. Cooper's complaints about various aches and pains, not objective medical information.

(e) On October 20, Mr. Cooper notified Superintendent Fleming in a message left on his telephone answering machine that he was going to the doctor the next day because he had an "almost blinding migraine." This was not one of the afflictions listed in Dr. Alexander's November 16 letter as having been one of Mr. Cooper's complaints.

(f) Mr. Cooper failed to cooperate in obtaining a second medical opinion on the status of his health. (A, B, C, D, E)

17. Robert Cullen, Personnel Director, wrote to Mr. Cooper on October 2 asking him to submit By October 16 a plan for removing waivers at his school next year for teachers teaching outside of their areas of certification. Mr. Cullen wrote to Mr.

Cooper again on November 6 and on December 11. To date, Mr. Cooper has not supplied the requested plan. (A, B, C, D)

Respectfully submitted,
/s/ Kenneth L. Fleming
Kenneth L. Fleming
Superintendent
Williamson County Schools