COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 25, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| DEWEY HARLESS, | ) | C/A NO. 03A01-9707-CH-00289 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | SULLIVAN COUNTY CHANCERY COURT |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| CITY OF KINGSPORT, | ) | |
| | ) | HONORABLE R. JERRY BECK, |
| Defendant-Appellee. | ) | JUDGE, By Interchange |

For Appellant                          For Appellee

DEWEY HARLESS, Pro Se                   J. MICHAEL BILLINGSLEY
Kingsport, Tennessee                    Kingsport, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

This litigation originated when Dewey Harless ("Harless") filed a petition for writ of certiorari seeking review of administrative decisions of Zack Wright ("Wright"), Building Official for the defendant City of Kingsport ("the City"). Those rulings decree the demolition of two structures owned by Harless. Wright's orders were issued in accordance with the provisions of Section 6-320, *et seq.*, of the City's 1981 Code of Ordinances, which provisions, in turn, were enacted pursuant to T.C.A. § 13-21-101, *et seq.* (1992 & Supp. 1997). Following a bench trial, the Chancellor affirmed Wright's determinations, and Harless appealed, raising the following questions for our review:

> 1. Did the fact that Wright served as both the investigator and the hearing officer in this case result in a denial of due process?
>
> 2. Is Wright's decision affected by bias, given that he acted as both investigator and hearing officer, and is an employee of the City?
>
> 3. Is Wright's decision arbitrary and capricious, or unsupported by the evidence?
>
> 4. Are the pertinent ordinances of the City facially unconstitutional?

We affirm.

## I. *Facts*

Harless is the owner of two lots, municipally known as 1717 and 1725 Reedy Creek Road in Kingsport. Each lot is improved with a structure that is presently in a state of disrepair. Wright is the "Building Official" for the City. In response to complaints received by the City, Wright conducted a

preliminary inspection of the premises, and subsequently issued a "Complaint of Unfitness for Human Habitation or Use and Notice of Hearing" for each of the structures. The complaints contain extensive findings regarding the dilapidated condition of each of the structures.

Separate hearings[1] were conducted regarding the two structures, with Wright acting as the hearing officer in both cases. The proof at each hearing consisted of Wright's observations regarding the subject structure; a copy of the City's complaint; photographs of the structure, submitted by Code Enforcement Officer Eddie Trent; Trent's testimony that the City had received several complaints regarding the structure; and the testimony of Harless and his wife.

Wright subsequently issued written findings of fact regarding each structure. With respect to the property at 1717 Reedy Creek Road, the findings are as follows:

> The structure in question consists of the remainder of a concrete block dwelling with a metal roof.
>
> This structure was gutted by fire several years ago. Although no evidence was introduced at the hearing, an examination of the premises reveals extensive fire damage. The rear portion of the roof has completely burned away with only fragments of the wood framing remaining. The metal roof has collapsed into the interior of the structure and smoke or fire damage is visible from the front.
>
> There is extensive deterioration to the foundation and block walls of the structure.

---

[1] These hearings were filed as one proceeding on appeal.

3

There are no windows or doors in the
structure and the front of the structure has
been boarded up with plywood.

There is no electricity connected to the
premises.

There is no utility water serving the
premises.

There is no sanitary sewer service connected
to the premises.

The building in question appears to have been
of poor quality construction at the time of
its original erection and appears to have not
received adequate maintenance through the
years. The fire which gutted the interior
has damaged or destroyed a great portion of
the wooden framing and extremely extensive
repair would be necessary to the wooden
portions.

I find that the value of the existing
structure to be not more than $500.00 which
is based upon salvage value of the material.

I find that to make this structure habitable,
an expenditure of a sum much greater than 50%
of the existing building value would need to
be made.

Wright made similar findings regarding the structure at 1725

Reedy Creek Road:

The structure in question consists of a frame
single family residence.

This structure is approximately fifty years
old, or older, and is erected on a brick
masonry foundation wall.

There is extensive deterioration to the
foundation wall with extensive separation and
weakening rendering it unsound and dangerous.

Most windows are broken out or boarded up.

The front entrance door fits poorly with gaps
around the door.

There is a gaping hole in the front gable.

4

The rear porch, a two level structure, suffers advanced deterioration and is near the point of collapse.

There is no electricity connected to the premises.

There is no utility water serving the premises.

There is no sanitary sewer service connected to the premises.

The dwelling appears to have been of low quality construction at the time of its original erection and appears to have not received adequate maintenance through the years. There is considerable evidence of water damage to wooden portions and the outside sheathing.

To stabilize and repair the foundation and make it structurally sound would require great expense and may not be possible without risking the entire collapse of the dwelling. Unless the foundation is made sound, there can be no satisfactory repair of the remainder of the dwelling.

I find that the value of the existing structure to be not more than $1000.00 which is based upon salvage value of the material.

I find that to make this structure habitable, an expenditure of a sum much greater than 50% of the existing building value would need to be made.

Pursuant to his findings, Wright ordered that each of the structures be demolished. He relied upon the City's Code of Ordinances, specifically Section 6-323(c), which mandates the removal or demolition of a structure where an expenditure of more than half of the structure's value would be necessary to make it habitable. Harless' appeal followed.

## II. *Applicable Law*

T.C.A. § 13-21-101, *et seq.* (1992 & Supp. 1997), authorize municipalities of this state to adopt ordinances pertaining to structures that are unfit for human occupation or use.  Pursuant to those provisions, the City enacted Sections 6-320 through 6-330 of its municipal code.  Those sections provide, in pertinent part, as follows:

> § 6-321.1.  The building official is hereby designated as the public officer of the City of Kingsport who shall exercise the powers herein prescribed.
>
> § 6-322.  Whenever a petition is filed with the building official by a public authority or by at least five (5) residents of the city charging that any structure is unfit for human occupation or use, or whenever it appears to the building official on his... own motion that any structure is unfit for occupation or use, the building official shall, if, after making a preliminary investigation, such investigation discloses a basis for such charges, issue and cause to be served upon the owner of and parties in interest of such structure, a complaint stating the charges in that respect and containing a notice that a hearing will be held before the building official (or his designated agent) at a time and place therein fixed not less than ten (10) days nor more than thirty (30) days after the serving of said complaint; that the owners and parties in interest shall be given the right to file an answer to the complaint and to appear in person, or otherwise, and give testimony at the place and time fixed in the complaint; and, that the rules of evidence prevailing in courts of law or equity shall not be controlling in hearings before the building official or his designated agent....[2]
>
> *   *   *
>
> § 6-323.  If, after such notice and hearing as above prescribed, the building official determines that the structure under consideration is unfit for human habitation

---

[2]Section 6-322 is taken almost verbatim from T.C.A. § 13-21-103(2)(Supp. 1997).

or use, he shall state in writing his findings of fact in support of such determination, and shall issue and cause to be served upon the owner thereof an order:

(a) If the repair, alteration, or improvement of the structure can be made at a reasonable cost in relation to the value of the structure requiring the owner within the time specified in the order to repair, alter, or improve such structure to render it fit for human occupation or use or if not adequately repaired, altered or improved within the time specified in the order to vacate and close the dwelling as a place of human habitation or use; or

(b) If the repair, alteration or improvement of the said structure cannot be made at a reasonable cost in relation to the value of the structure requiring the owner within the time specified in the order to remove or demolish such structure.[3]

(c) The building official shall determine the value of the structure in question existing on the land and the value of the land itself shall not be considered and if the structure can be made to conform to such standards as will make it properly habitable by an expenditure of not more than fifty (50) percent of said value, the order referred to in the preceding paragraph shall conform to the first alternative. If an expenditure of more than fifty (50) percent of the value just referred to would be necessary to make the structure properly habitable, the order in the preceding paragraph shall conform to the second alternative.[4]

* * *

---

[3]Subsections 6-323(a) and (b) are substantially identical to T.C.A. § 13-21-103(3)(A) and (B)(Supp. 1997), respectively.

[4]Subsection 6-323(c) was enacted pursuant to T.C.A. § 13-21-103(3)(A) and (B)(Supp. 1997), which allow a municipality to fix a certain percentage of repair costs as the threshold amount of "reasonable" repairs.

7

§ 6-329.

(a) Any person affected by an order issued by the building official may file a bill in the chancery court for an injunction restraining the building official from carrying out the provisions of the order, and the court may, upon the filing of such bill, issue a temporary injunction restraining the building official pending the final disposition of the cause; provided, however, that within sixty (60) days after the posting and service of the order of the building official, such persons shall file such bill in the court. Hearings shall be had by the court on such bills within twenty (20) days or as soon thereafter as possible, and shall be given preference over other matters on the court's calendar.

(b) The court shall hear and determine the issue raised and shall enter such final order or decree as law and justice may require. In all such proceedings, the findings of the building official as to facts, if supported by evidence, shall be conclusive. Costs shall be in the discretion of the court....[5]

\* \* \*

§ 6-330. The building official is authorized to exercise such powers as may be necessary or convenient to carry out and effectuate the purposes and provisions of this chapter including the following powers in addition to others herein granted:

(a) To investigate conditions in the city in order to determine which structures therein are unfit for human occupation or use.

(b) To administer oaths and affirmations, examine witnesses and receive evidence.

(c) To enter upon premises for the purposes of making examinations

---

[5]Section 6-329 is taken almost verbatim from T.C.A. § 12-21-106.

> provided that such entries shall be
> made in such manner as to cause the
> least possible inconvenience to the
> persons in possession.[6]


III. *Scope of Review*


Common law certiorari, as provided for in T.C.A. § 27-8-101 (Supp. 1997),[7] is available for judicial review of a decision of an administrative body acting in a judicial or quasi-judicial capacity. *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983). The Supreme Court has stated that

> ...administrative decisions are presumed to
> be valid and a heavy burden of proof rests
> upon the shoulders of the party who
> challenges the action.

*McCallen v. City of Memphis*, 786 S.W.2d 633, 641 (Tenn. 1990). Generally speaking, review of an administrative decision by way of the common law writ is confined to the question of whether the inferior board or tribunal has exceeded its jurisdiction or acted illegally, arbitrarily, capriciously, or fraudulently. T.C.A. § 27-8-101 (Supp. 1997); *McCallen*, 786 S.W.2d at 638; *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn.App. 1996); *Gallatin Hous. Auth. v. City Council, City of*

---

[6]The provisions of § 6-330 are derived directly from T.C.A. § 13-21-107.

[7]That section provides, in pertinent part, as follows:

> The writ of certiorari may be granted whenever
> authorized by law, and also in all cases where an
> inferior tribunal, board, or officer exercising
> judicial functions has exceeded the jurisdiction
> conferred, or is acting illegally, when, in the
> judgment of the court, there is no other plain,
> speedy, or adequate remedy....

*Gallatin*, 868 S.W.2d 278, 279-80 (Tenn.App. 1993). This question typically involves a determination of whether the record contains material evidence to support the decision below. *See Hoover v. Metropolitan Bd. of Housing Appeals*, 936 S.W.2d 950, 954 (Tenn.App. 1996); *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 545 (Tenn.App. 1995); *Davis Group (MC), Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 912 S.W.2d 178, 180 (Tenn.App. 1995); and *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 842 S.W.2d 611, 619 (Tenn.App. 1992).

If a reviewing court determines that there is no material evidence to support an administrative decision, it "must conclude that the administrative body acted illegally." *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 904-05. An administrative decision may be found to be illegal, arbitrary or fraudulent in other circumstances as well; for example, where the standards of due process have not been met, where a constitutional or statutory provision has been violated, or where some unlawful procedure has been followed. *Id.* at 905; *Brooks v. Fisher*, 705 S.W.2d 135, 136 (Tenn.App. 1985).

The reviewing court does not inquire into the correctness of the inferior tribunal's findings of fact, T.C.A. § 13-21-106(b), *Gallatin Hous. Auth.*, 868 S.W.2d at 280; nor is it permitted to weigh the evidence. *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 904. Moreover, the reviewing court "should refrain from substituting its judgment for the broad

10

discretionary authority of the local governmental body."
*McCallen*, 786 S.W.2d at 642.


IV. *Analysis*


As indicated earlier, Harless essentially advances four theories on this appeal. He contends: 1) that he was denied due process by virtue of the fact that Wright acted as both investigator and hearing officer; 2) that Wright was biased; 3) that the evidence does not support Wright's decisions; and 4) that Sections 6-322 and 6-323 of the City's Code of Ordinances are unconstitutional on their face.


We shall address Harless' arguments regarding due process and bias together, since the two theories are related and are discussed in tandem at various points in his brief. We initially note that the applicable statutory provisions, as well as the corresponding provisions of the City's Code of Ordinances, authorize the designated official -- in this case, Wright -- to conduct a preliminary investigation, preside over a subsequent hearing, determine whether the structure in question is fit for human occupation or use, and issue findings of fact and a concomitant order. *See* T.C.A. § 13-21-103(2) and (3)(Supp. 1997); T.C.A. § 13-21-107; the City's Code §§ 6-322, 6-323 and 6-330 (1981).


It is true, as Harless points out, that due process guarantees to a party an administrative hearing before a fair and impartial tribunal. *Jones v. Greene*, 946 S.W.2d 817, 825

11

(Tenn.App. 1996); *Cooper v. Williamson County Bd. of Educ.*, 803 S.W.2d 200, 202 (Tenn. 1990).  Nevertheless, with regard to the propriety of an administrative official acting in dual capacities, the Supreme Court has stated that

> the mere fact that both investigative and adjudicative functions have been granted to an administrative body... does not of itself create an unconstitutional risk of bias in an administrative adjudication.

*Cooper*, 803 S.W.2d at 202-03.  In reaching this conclusion, the Supreme Court relied -- as do both parties in the instant case -- on the decision of the United States Supreme Court in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).  In that decision, the United States Supreme Court stated that

> [t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a... difficult burden of persuasion to carry.

*Id.*, 95 S.Ct. at 1464.  The Court also observed that

> [t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process....

*Id.,* 95 S.Ct. at 1467.

Furthermore, it is well-established that administrative decision-makers are presumed to discharge their duties with

12

honesty and integrity. *Jones*, 946 S.W.2d at 825; *Cooper*, 803 S.W.2d at 203 (citing *Withrow*, 95 S.Ct. at 1464). As noted in *Withrow*, this presumption is a difficult one to overcome. *Id.*, 95 S.Ct. at 1464. In the instant case, Harless has offered no evidence of bias to support his heavy burden of persuasion; nor does the record offer any indication that Wright's performance of his dual roles resulted in a denial of due process. *See Cooper*, 803 S.W.2d at 202-03. Accordingly, we find Harless' arguments regarding due process and bias to be without merit.

We next turn to Harless' contention, as stated in his words, that "the record, including the two transcripts is utterly devoid of any support for [Wright's] two findings that to make plaintiff's two structures habitable, an expenditure of a sum greater than 50% of the existing buildings' value would need to be made." We also find this argument to be unpersuasive. The record contains substantial evidence to support Wright's decisions. The findings from Wright's investigation, as well as the numerous photographs introduced at the hearings, represent material evidence of the dilapidated condition of the structures. Furthermore, the transcripts indicate that Wright allowed Harless and his wife numerous opportunities to explain their plans for repairing the structures, but that they failed to articulate any definite schedule or strategy for accomplishing such repairs.

In his brief, Harless does not explain exactly how or why the record lacks support for Wright's findings; instead, he makes only a general reference to his statement of facts and the transcripts of the hearings, with no further argument or citation

13

to the record.  We believe that the language of this court in

***Hoover v. Metropolitan Bd. of Housing Appeals***, 936 S.W.2d 950

(Tenn.App. 1996), is applicable here:

> this record does contain substantial and
> material evidence that each of the subject
> properties required repairs the cost of which
> would exceed 50% of the value of the
> property.  The lists of necessary repairs and
> comprehensive pictorial illustrations are
> sufficient to satisfy a reasonable person of
> the cost of repairs in relation to the value
> of the property.

***Id.*** at 954.  Accordingly, we find that the record contains

substantial and material evidence to support Wright's decisions.

Therefore, we conclude that those decisions are not "clearly

illegal, arbitrary or capricious."  ***Id.*** (quoting ***McCallen v. City***

***of Memphis***, 786 S.W.2d 633, 642 (Tenn. 1990)).


Harless' remaining argument concerns the

constitutionality of Sections 6-322 and 6-323 of the City's Code

of Ordinances.  We note initially that the portions of the

ordinances attacked by Harless are in strict compliance with, and

essentially track the language of, the corresponding statutory

provisions at T.C.A. § 13-21-103(2) and (3)(Supp. 1997).  By

challenging the ordinances, therefore, Harless essentially

attacks the validity of the statutes, because to hold the

ordinances unconstitutional would effectively render the

corresponding statutory provisions invalid as well.


We cannot reach this constitutional issue.  Harless has

failed to comply with T.C.A. § 29-14-107(b), which requires that

14

a party who seeks to challenge the constitutionality of a statute of statewide effect must give notice to the State Attorney General. By the same token, Harless has failed to comply with Rule 24.04, Tenn.R.Civ.P.[8], or Rule 32, T.R.A.P.[9], which impose similar notice requirements in cases where the validity of a statute is contested. These requirements are mandatory; in the absence of Harless' compliance therewith, the issue of the relevant statutes' constitutionality is not properly before us. *See* **Cummings v. Shipp**, 3 S.W.2d 1062, 1063 (Tenn. 1928); **McDaniel v. General Care Corp.**, 627 S.W.2d 129, 133 (Tenn.App. 1981); **Wallace v. Knoxville's Community Dev. Corp.**, 568 S.W.2d 107, 110 (Tenn.App. 1978).

In any event, we find nothing facially unconstitutional about the ordinances in question. We note that substantially similar ordinances have withstood constitutional attack and have been held to fall "squarely within the legitimate use of the police power." **Winters v. Sawyer**, 463 S.W.2d 705, 707 (Tenn. 1971). Harless' argument essentially revolves around his contention that allowing the same official to act in multiple capacities renders an impartial hearing impossible. We have already rejected that argument in this case. Harless also suggests that the failure of Section 6-323 of the City's Code of Ordinances to define the term "value" renders that ordinance

---

[8]Rule 24.04 provides that "[w]hen the validity of a statute of this state... is drawn in question in any action to which the State or an officer or agency is not a party, the court shall require that notice be given the Attorney General, specifying the pertinent statute, rule or regulation."

[9]Rule 32(a) provides that "[w]hen the validity of a statute of this state... is drawn in question in any appeal to which the state or an officer or agency is not a party, the party raising such question shall serve a copy of the party's brief on the Attorney General."

unconstitutional; this argument is likewise found to be without merit.

## V. *Conclusion*

We therefore find and hold that Wright's decisions are supported by substantial and material evidence, ***Hoover v. Metropolitan Bd. of Housing Appeals***, 936 S.W.2d 950, 954 (Tenn.App. 1996), and are not "illegal, arbitrary, or capricious," ***McCallen v. City of Memphis***, 786 S.W.2d 633, 642 (Tenn. 1990). Accordingly, we will "refrain from substituting [our] judgment for the broad discretionary authority of the local governmental body." ***Id.***

The decision of the Chancery Court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed there, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

16

CONCUR:

_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.