# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
### August 28, 2012 Session

## JOSEPH J. LEVITT, JR. v. CITY OF OAK RIDGE, ET. AL.

**Appeal from the Chancery Court for Anderson County**
**No. 11CH2768     Hon. William Everett Lantrip, Chancellor**

---

### No. E2011-02732-COA-R3-CV-FILED-OCTOBER 30, 2012

---

This appeal involves the efforts of Oak Ridge's Board of Building and Housing Code Appeals to demolish buildings in Applewood Apartment Complex pursuant to Tennessee Code Annotated section 13-21-101, Tennessee's Slum Clearance and Redevelopment Statute. Owner filed a petition for writ of certiorari when the Board voted to demolish the buildings. The trial court granted the petition but granted the Board's motion for summary judgment. Owner appeals. We reverse the grant of summary judgment on the issue of whether the Board acted without material evidence but affirm the grant of summary judgment on all other issues. The case is remanded for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Joseph J. Levitt, Jr., Knoxville, Tennessee, pro se.

John T. Batson, Jr. and Daniel R. Pilkington, Knoxville, Tennessee, for the appellees, City of Oak Ridge, Oak Ridge Board of Building and Housing Appeals, and Denny Boss.

### OPINION

### I. BACKGROUND

Tennessee Code Annotated section 13-21-102 permits a city "to exercise its police powers to repair, close or demolish" structures deemed "unfit for human occupation or use."

In exercising that power, the City of Oak Ridge ("the City") enacted a property maintenance code ("the Code") and created the Board of Building and Housing Code Appeals ("the Board"). The City tasked the city manager or the manager's duly authorized designee with issuing and causing to be served upon "parties in interest" and the owner of any structure appearing to be unfit for human occupation, a complaint stating the specific charges and a notice that a hearing would be held before the Board regarding the complaint.

Pursuant to the Code, the Board is limited to hearing "cases of structures unfit for human occupation or use" and "appeals of notices for housing violations." Likewise, the Board's jurisdiction is limited to determining "whether the structure is unfit for human occupation or use, whether a violation exists, whether the city manager's notice of violation is proper and/or whether" to grant "a request for an extension of time or waiver." However, the Board is not required to follow the rules of evidence generally applicable in a court of law or equity. Following a hearing on the aforementioned issues, the Board is to

issue a written decision upholding or dismissing the notice of the city manager, or modifying the notice to the extent the [B]oard determines the order was improper, or granting or denying an extension of time for compliance or granting or denying a waiver, or declaring a structure unfit for human occupation or use.

In determining whether a structure is unfit for human occupation or use, the Board must consult the Code, which provides, in pertinent part,

(3) Unfit for human occupation or use; defined. A structure is unfit for human occupation or use if any or all of the following conditions, which are dangerous or injurious to the health, safety, morals or general welfare of the occupants of such structure, the occupants of neighboring structures or other residents of the [C]ity, exist:

(a) Defects in the structure which increase the hazards of fire, accident or other calamities;

(b) Structural defects, including but not limited to: those whose interior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity falls outside the middle third of its base; or those which exclusive of the foundation show thirty-three percent (33%) or more of damage or deterioration of the supporting member(s) or fifty percent (50%) or more of damage

or deterioration of the nonsupporting portions of the structure or outside walls or coverings; or those which have improperly distributed loads upon the floors or roofs or in which the same are overloaded or which have insufficient strength to be reasonably safe for the purpose used;

(c) Lack of adequate ventilation, light, air, heat or sanitary facilities;

(d) Dilapidation or decay;[1]

(f) Disrepair, including having parts which are so attached that may fall and injure persons on or off the property; and

(g) Lack of adequate facilities for egress in case of fire or panic, or those having insufficient stairways, elevators, fire escapes or other means of egress in the case of an emergency.

Pursuant to the Code all structures deemed unfit for human occupation or use must be "declared unlawful and a public nuisance" and must be "repaired, vacated, demolished or otherwise abated." In determining whether a structure unfit for occupation or use should be repaired, vacated, demolished or abated, the Board must make its decision in accordance with the Code, which provides, in pertinent part,

(5) Standards for repair, vacation or demolition. The following standards shall be followed in substance by the [Board] in ordering repair, vacation or demolition of a structure unfit for human occupation or use.

(a) If the structure can reasonably be repaired, altered or improved so that it will no longer exist in violation of the [Code], it shall be ordered repaired, altered or improved to render the structure fit for human occupation or use or to vacate and close the structure as a place of human occupation or use.

(b) If the structure is fifty percent (50%) or more damaged, decayed or deteriorated from its original condition or value, it shall be ordered vacated and demolished or removed.

---

[1]The Code did not contain a subsection (e).

(c) In any case where the structure is in such a condition as to make it dangerous to the health, safety or general welfare of its occupants or the general public, it shall also be ordered vacated and the [Board] may additionally order the structure and the property to be secured in such a manner to protect the health, safety or general welfare of the public or persons on the property until such repairs or demolition has been completed, or may order other immediate actions reasonably necessary.

Once a structure has been declared unfit for human occupation or use, an owner may seek judicial review of the Board's decision by filing a petition for common law writ of certiorari. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). A common law writ of certiorari provides quite limited judicial review. *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The scope of this review goes no further than determining whether the administrative body "exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or fraudulently; or acted without material evidence to support its decision." *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758-59 (Tenn. Ct. App. 2000) (citations omitted).

In this case, Joseph J. Levitt, Jr. ("Owner") was the owner of Applewood Apartment Complex ("Applewood"), which consisted of 13 apartment buildings located in Oak Ridge, Tennessee. On May 26, 2009, the City obtained administrative inspection warrants to inspect four buildings ("the subject buildings") in Applewood. The next day, the City and a private engineering firm hired by the City, Corum Engineering ("Corum"), inspected the subject buildings. Corum conducted a structural evaluation of the subject buildings. The City and Corum developed independent findings and issued reports based upon those findings. Timothy Ward, the Community Development Division Manager, mailed Owner a violation notice, containing the findings and a letter providing, in pertinent part,

Because the degree of work needed to address structural issues mentioned in the attached reports goes well beyond ordinary repairs, you are hereby ordered, in accordance with sections 106.1 through 106.5 of the 2006 International Building Code, to submit detailed construction documents prepared by a registered design professional detailing corrective measures that address our combined inspection findings. Prior to any repairs being made, a lawfully issued building permit must be applied for and issued in accordance with all state and local ordinances. [H]ealth and life safety issues mentioned require your highest priorities. Beyond the structural comments, many health-related problems also require immediate attention, such as having dead animals and

-4-

animal feces throughout and standing water resulting in excessive mold, to mention just a few.

In conclusion, I find the conditions noted by this joint inspection to be far in excess of what a reasonable person would consider acceptable for any building regardless of its age. The [City] is willing to work with you toward[] establishing compliance timelines dependent solely on the degree of hazard. I will expect to hear from you within 14 days of this notice outlining your proposed timelines. If you're unable or unwilling to work with my office, our standard violation notice will follow []. You also have the option of appearing before the Highland View Redevelopment Advisory Board with a proposal to enter into a development agreement. Additional information may be found in the Highland View Redevelopment and Urban Renewal Plan dated May, 2004.

The notice and the inspection results were also hand-delivered to Owner's staff. When Owner did not respond, the City issued a second notice containing the same information.

In April 2010, Owner requested reinspection of one apartment, which was found to be in compliance. Owner did not indicate that he had completed any additional repairs. In October 2010, the City advised Owner that a hearing to determine whether the structures were unfit for human occupation or use would be held on November 11, 2010. Prior to the hearing, the Board was provided with the following summary and recommendations,

**Case Summary:**

On May 26, 2009 administrative warrants were obtained for the inspection of [the subject buildings in Applewood]. The warrants were executed on May 27, 2009 and all four buildings were inspected by city staff and [Corum]. Pictures and reports are in the Board packet.

Violation notices were sent on August 4, 2009 by certified mail to [Owner]. The green card was returned on September 16, 2009. Only apartment E in building 119 [] has been reinspected for compliance. This was done on April 20, 2010. Notices citing these four buildings to be brought before the Board [] were sent to [Owner] on October 14, 2010[.]

**Staff recommendations:**

It is the recommendation of the staff that an order to repair be issued for the above cases. It is also staff recommendation that the owner be ordered to

provide staff with a reasonable timetable of when the repairs would begin and the estimated time to complete those repairs. This timetable should address the major structural items and life safety issues first. The timetable should also include the method in which the structural items will be repaired.

At the hearing, Bruce LeForce, Chairman of the Board, called the meeting to order and noted that the City recommended the issuance of an order, requiring Owner to repair the subject buildings and to provide a reasonable timetable advising the Board when the repairs would be completed. Denny Boss, the City's Code Enforcement Supervisor, testified that he did not know whether any of the structural deficiencies had been corrected because Owner had not requested a reinspection of the subject buildings. He admitted that he had been asked to reinspect one apartment in one of the subject buildings and that he found that apartment to be in compliance. He stated that two other apartments within the subject buildings were also found to be in compliance prior to the issuance of the warrants. He said that of the 48 units in the subject buildings, only 3 units were in compliance with the Code. He admitted that he had not sought a second set of warrants to reinspect the buildings prior to the hearing. He asserted that Owner had not applied for a building permit to conduct the repairs of the subject buildings even after Owner was advised to obtain such a permit. He claimed that permits were "sometimes" issued for major structural repairs even though it was not common practice to issue permits for the repair of a building. He related that Owner had not submitted "a detailed construction document prepared by a registered design professional" providing for the repair of the subject buildings.

Owner testified that in May 2004, the City sought to purchase Applewood and tear down all of the buildings on the property. He related that he worked with the City for several years and delayed repair of Applewood in order to "keep the price down" for the City. He asserted that in 2008, he finally learned that the City was not going to acquire Applewood. He claimed that even after he no longer sought to sell Applewood to the City, he followed the City's advice regarding the repair of the buildings. He claimed that at the City's direction, the subject buildings have had the least amount of repair. He stated that as a result of his compliance, he was now faced with the forced demolition of the subject buildings.

Owner claimed that he completed some work in Applewood. He submitted a copy of his weekly progress reports to the Board but complained when Mr. Lee, a member of the Board, refused to look at his reports. He related that the City refused to work with him regarding a timetable for the reconstruction of Applewood because the City wanted the buildings torn down instead of repaired. He claimed that his employees worked on Applewood and the subject buildings every day and asserted that he was prepared to proceed in the manner the Board directed. He requested more time to complete the repairs required in the subject buildings but asserted that some structural work had been completed.

When asked whether he had submitted a detailed construction document regarding the repairs, the following colloquy occurred:

Owner: All right. I'm going to answer it "yes," although that's not entirely correct.

Mr. Lee: If you have where is it?

Owner: Okay. The reason why I say yes is that we followed the directives of the [c]ourt and the [c]ourt recognized that we had not one building but thirteen buildings and established an order of priority, so we deem the [c]ourt direction to be what we should follow.

Mr. Lee: Okay. It's my understanding that the only subject matter before the [c]ity [c]ourt was the three buildings that we had previously heard and then dismissed; is that correct? That's the only case pending that this Board has had any involvement in.

Owner: [] I don't think that's correct. There are [20] some-odd separate cases down there, and the [c]ourt has looked at it as Applewood, that we've got [13] buildings that need to be dealt with, not just [1] building or [3] buildings, and I may be wrong about that, but I'm saying to you today, our posture on that has been the same in every appearance [], and we want to deal with the whole problem but we want to do it under a reasonable plan, under direction. The [c]ourt established a plan, we have been following that []. And I'm again asking you, select the building [] and say, "Let's get this one done."

Mr. Lee: Okay. Next question. Do you own these four buildings that are in front of us today?

Owner: Yes. Certainly.

Mr. Lee: And you are the property owner of these four buildings[?]

Owner: Yes.

-7-

Mr. Lee: Okay. In my mind . . . it's not clear how it's the City's responsibility to guide you and to come into some sort of agreement with you as to how you should go about maintaining these buildings to where they're within the Code.

Owner: For two reasons.

Mr. Lee: That's just a statement, that's not a question. I don't see that it's our job to do your job, okay?

Did you receive the second [Notice of Violation?]

* * *

Owner: I'm not going to testify to something that I don't know for sure.

Mr. Lee: Okay. Well, I can assure you you've got it because we've got the green card and it's part of the summary.

Owner: Okay. Yes.

Mr. Lee: You have this. Now, the second Notice of Violation.

Owner: Mr. Lee, we're only asking [for] as much time to fix Applewood as you've had to fix your house, that's all.

Mr. Lee: All right. My house isn't for rent. If you'd like to come over and have lunch with me[,] you can help me with some painting.

Owner: Okay. This law that you're here to enforce has nothing to do with rental property. Mr. Lee, are you telling your fellow Board members that you can take years to fix your property because you are not renting it out? Is that your position? It's not fair and you know it.

Mr. Lee: If you'd like to file a complaint against my home the men in this room can certainly accommodate you. That's not on the agenda, [Owner], let's move on.

Owner: Mr. Lee, nobody filed a complaint against Applewood.

-8-

Mr. Lee:    I'm almost done[.]  So I want to have it be known that I accept
            the summary.  I accept the summary in its entirety.  I look at this
            fortune of [c]ity time and money and expense of hiring
            professionals and the expense of hiring others associated with
            dealing with this matter of personal property, which has nothing
            to do with [c]ity policy other than [c]ode enforcement, and I'm
            thinking, "Why should we give him another sixty days, ninety
            days, a year or two until he wants to comply?"  I'm inclined to
            say no to that because I don't think you really care to comply[.]

Owner:      What do you base that on?

Mr. Lee:    Based on the fact that there's no compliance, is what I base that
            on, okay?  I move that the [four subject buildings] are unfit for
            human occupation or use under [c]ity code 9-223 through 9-225,
            and that the structure should be declared a nuisance under City
            Code 9-226.  That's a motion, Mr. Chairman.

Mr. Nipper seconded the motion, and the Board discussed the motion.  Mr. Ward asked Mr.
Boss why follow-up inspections had not been completed, and Mr. Boss responded by stating,

> We had to get administrative search warrants to go on the property at hand
> because [Owner] would not allow us on the property.  When we made our
> initial inspections nothing was done so our only recourse was to take our
> inspections and cite [Owner] to court to try to get the courts to get in and start
> getting some sort of compliance, because we were not having any luck.  Once
> this all took place we could not go back on the property without a request from
> [Owner] or his management team to come back and make a reinspection.  Each
> time that they have provided us with a request to come back we have provided
> that reinspection.  And that's the reason.  We can only go on the property and
> look at things when they request us to come back.

Following further questioning of Mr. Boss, Owner stated, "[T]hey haven't sought a warrant.
[Do] you understand why we couldn't just invite them back for general inspections?"  Owner
explained that the City refused to meet with him and work out a plan of procedure because
the City did not want to fix the buildings.  Following further discussion, the motion to declare
the subject buildings unfit for human occupation or use was approved.

Mr. Lee then moved to order the demolition of the subject buildings within 90 days. Mr. Russell second the motion, and the motion was discussed. Owner complained that the motion to demolish did not comport with the City's recommendation before the Board to repair the subject buildings. Mr. Ward proposed an amendment, namely that the demolition would be contingent upon the results of a second inspection of the subject buildings. The amendment was rejected, and the Board voted to demolish the subject buildings.

Following the hearing, the Board issued an order finding that the subject buildings were unfit for human occupation or use and should be demolished. In its order, the Board listed several violations of the International Property Maintenance Code, which was adopted by the City in the Code. The Board stated that its decision was based upon the specifically mentioned code violations and the additional code violations set out in the Board's notice to appear and in the Corum report. Owner filed a complaint "for appeal, certiorari, and supersedeas" against the City, the Board, and Denny Boss. The trial court treated the complaint for appeal as a petition for writ of certiorari.

Owner raised a number of issues relating to the hearing before the Board, the Board's bias, and the administrative inspection warrants. Relative to the hearing, Owner alleged that the Board was not authorized to conduct the hearing because the city manager did not initiate the proceeding; that the City failed to provide notice of the hearing to all of the parties in interest; that the inspections relied upon by the Board were approximately 18 months old; and that the order did not conform to the motion before the Board at the hearing. Relative to bias, Owner stated, "Mr. Lee displayed an obvious bias against [me] because [I] had asked the [B]oard to give [me] the same amount of time Mr. Lee had taken to remodel a residence." Relative to the warrants, Owner argued that the warrants were invalid, unconstitutional, and did not comply with Tennessee Code Annotated section 68-120-117. Owner also complained that his failure to complete his reconstruction efforts was a direct result of his belief that the City intended to purchase the property.

The City, the Board, and Denny Boss ("Defendants") denied the allegations, alleged that the Board and Mr. Boss were not properly joined as parties, and noted that review of the Board's decision was limited to the question of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, capriciously, or fraudulently. The court granted the motion to dismiss as to any causes of action in addition to the petition and as to any causes of action against the Board and Mr. Boss "in their individual capacity."

Defendants filed a motion for summary judgment along with a statement of undisputed material facts. Defendants alleged that the Board's decision was supported by the record and should be upheld. They argued that the Board had not exceeded its jurisdiction in declaring the subject buildings unfit for human occupation or use when Owner

did not refute the evidence presented at the hearing or offer any evidence that the subject buildings were fit for human occupation or use. Owner responded to the motion by asserting that the motion did not address the issues raised in his petition. He alleged that each of the subject buildings could be reasonably repaired, altered, or improved. He argued that the evidence before the board was inadmissible because it was obtained as a result of the execution of invalid administrative inspection warrants.

Following a hearing on the motion for summary judgment, the court held that the Board's decision was supported by the record and was not unlawful, arbitrary, or capricious. In so holding, the court noted that it was limited to the record and the facts presented to the Board and stated, in pertinent part,

> And the [c]ourt finds that the record and undisputed facts that the [c]ourt had before it today [were] replete with references that, especially the Corum reports, that finds unsafe and hazardous conditions.
>
> The [c]ourt further finds that there was notice and no response to the - - to the reports by the property owner, so the [c]ourt finds that there is material and substantial evidence that supports the [B]oard's decision.
>
> The [c]ourt further finds that the proceedings were not unlawful, arbitrary, or capricious and that . . . there were no objections to the evidence presented before the [B]oard and that this [c]ourt is without authority to consider the administrative search warrants . . . at this stage of the proceeding.
>
> And so the [c]ourt finds that this is an appropriate case for summary judgment, that the other issues presented to the [c]ourt in the [c]omplaint are not relevant or material to the authority granted to this [c]ourt to review the actions of the [Board]. And for that reason the [c]ourt grants the [D]efendants' motion for summary judgment, finding that there [are no undisputed material facts] and that the [D]efendants are entitled to a judgment as a matter of law.

This timely appeal followed.

## II.  ISSUES

We consolidate and restate the issues raised on appeal by Owner as follows:

A.  Whether the trial court erred in granting the motion for summary judgment.

B.  Whether the trial court erred in refusing to permit additional evidence.

## III.  STANDARD OF REVIEW

This court cannot "review this appeal using the standards of review normally associated with common-law writs of certiorari because the issues before us are based upon [the grant of a motion for] summary judgment." *Cunningham v. City of Chattanooga*, No. E2008-02223-COA-R3-CV, 2009 WL 2922789, at *4 (Tenn. Ct. App. Sep. 11, 2009) (citing *Jeffries v. Tennessee Dept. of Correction*, 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002)). Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

### A.

Owner asserts that the trial court merely granted the motion for summary judgment without considering the issues raised in the complaint. In support of this assertion, he raised a plethora of issues in his brief that were contained in his complaint. Each issue relates to his general complaint that the Board exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or fraudulently; or acted without material evidence to support its decision. We will address each issue in turn in our de novo review of the grant of the motion for summary judgment.

### 1.

Owner asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that the Board exceeded its jurisdiction by proceeding without providing notice to all of the parties in interest, namely those who resided in the subject buildings. Defendants respond that the Board lacked knowledge as to whether the subject buildings were occupied because Owner refused the City's entry onto the property prior to the execution of the administrative inspection warrants. Defendants further state that Owner was given appropriate notice and that Owner lacked standing to challenge the lack of notice to other parties.

Owner did not raise the issue of lack of notice at the hearing with the Board. The Board should have been given the opportunity to correct the lack of notice prior to the hearing. Additionally, Owner cannot complain about the lack of notice to unnamed parties in interest on appeal without establishing that he has third-party standing to proceed on behalf of the alleged interested parties. *Gray's Disposal Co., Inc. v. Metro. Gov't of Nashville*, 122 S.W.3d 148, 158 (Tenn. Ct. App. 2002) (listing the three criteria that a third-party must satisfy in order to bring a claim on another party's behalf). Genuine issues of material fact did not remain on the issue of notice; therefore, we affirm the court's grant of summary judgment on this issue.

### 2.

Owner asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that the proceedings before the Board were not authorized by the City. He claims that the proceedings should have been initiated by the city manager, not the code enforcement inspector. Defendants respond that the notices were authorized by the City. Likewise, Owner admits that the inspector may have been authorized

-13-

pursuant to section 13-203 of the Code to act in the manager's stead. Having reviewed the notice, we hold that there was not *any* material evidence from which the trier of fact could infer that the proceeding was not authorized by the City; therefore, we affirm the court's grant of summary judgment on this issue.

3.

Owner asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that the witnesses were not sworn prior to the hearing. "The Tennessee legislature has not chosen to require that parties appearing in front of local boards and commissions be sworn before their statements and testimony can be received by those bodies." *Shute v. Metro. Gov't of Nashville, Davidson Cnty.*, No. M2009-01417-COA-R3-CV, 2010 WL 3064362, at *7 (Tenn. Ct. App. Aug. 5, 2010), *perm. app. denied* (Tenn. Dec. 7, 2010). We hold that there was not *any* material evidence from which the trier of fact could infer that the Board's procedure was unlawful or arbitrary because the Board failed to issue an oath to the witnesses before accepting testimony at the hearing. We affirm the court's grant of summary judgment on this issue.

4.

Owner asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that the Board's order did not conform to the motion before the Board. The order specifically incorporated the transcript of the hearing before the Board. Having reviewed the transcript and the order, we hold that there was not *any* material evidence from which the trier of fact could infer that the Board's order did not conform to the motion before the Board to demolish the subject buildings. We affirm the court's grant of summary judgment on this issue.

5.

Owner asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that the administrative inspection warrants were defective and unconstitutional. Defendants respond that Owner waived review of this issue. They note that Owner never raised any issues regarding the validity of the warrants at the hearing before the Board.

The Fourth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits searches and seizures without a warrant based upon probable cause supported by oath or affirmation. *State v. Hayes*, 337 S.W.3d 235, 251 (Tenn. Crim. App. 2010). Likewise, Tennessee Code Annotated section 68-120-117

-14-

delineates the requirements for obtaining an administrative inspection warrant in Tennessee and provides, in pertinent part,

> (h) Any person aggrieved by an unlawful inspection of premises named in an administrative inspection warrant may, in any judicial or administrative proceeding, move to suppress any evidence or information received by the agency pursuant to the inspection.
>
> (i) If the court or the administrative agency finds that the inspection was unlawful, such evidence and information shall be suppressed and not considered in the proceeding.

Owner failed to raise any issues relating to the administrative inspection warrants at the hearing before the Board. In fact, Owner complained that the City had not obtained a second set of administrative inspection warrants prior to the hearing. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 466-67 (Tenn. Ct. App. 1984)). "The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted).

In some cases, appellate courts have allowed those aggrieved by evidence obtained pursuant to an allegedly unlawful search to raise an issue regarding the constitutionality of the search on appeal even though he or she discussed the evidence sought to be suppressed at trial. *State v. Valentine*, 911 S.W.2d 328, 330-31 (Tenn. 1995). This exception to the doctrine of waiver is codified in Rule 41(h) of the Tennessee Rules of Criminal Procedure, which provides, in pertinent part,

> A defendant does not waive the right to object to the admissibility of evidence if:
>
> > (1) inadmissible evidence obtained by an illegal search or seizure is erroneously introduced against the defendant; and
> >
> > (2) the defendant subsequently testifies as to the same evidence but gives it an innocent or mitigating cast as to the charge and denies the charge.

A similar exception has not been adopted for evidence obtained pursuant to an administrative inspection warrant in a civil case. *See generally Camara v. Mun. Court*, 387 U.S. 523, 538

(1967) (differentiating between the interests at stake when an administrative inspection warrant is sought from the interests at stake when a search warrant is sought in a criminal investigation). Accordingly, we hold that there were no genuine issues of material fact relevant to the admissibility of evidence obtained pursuant to the warrants because Owner waived review of the issue on appeal to the trial court. We affirm the court's grant of summary judgment on this issue.

6.

As mentioned previously, Owner also asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that the Board's decision was based upon incomplete evidence. He notes that the City failed to request a *second* set of administrative inspection warrants to reinspect the subject buildings; therefore, the Board lacked current information regarding the condition of the buildings when it issued its decision. Defendants respond that Owner never requested a second inspection of the buildings and never alleged that all of the structural defects had been modified or repaired.

Owner received notice that a hearing was to be held to determine whether the subject buildings were unfit for human occupation or use. He was advised that the hearing was his "opportunity to dispute the violation or present relevant evidence." He had approximately 17 months to either complete the necessary repairs or submit a detailed report outlining his plan to correct the structural defects at the hearing. Indeed, approximately 17 months had passed between Owner's receipt of the notice of the violation and his receipt of the notice of the hearing. Owner simply failed to present sufficient proof that the subject buildings should not be declared unfit for human occupation or use. Owner cannot blame his failure to present evidence to the contrary on the Board. Accordingly, we hold that there was not *any* material evidence from which the trier of fact could infer that the Board's procedure was unlawful or arbitrary because the Board failed to execute a second set of administrative inspection warrants. We affirm the court's grant of summary judgment on this issue.

7.

Owner asserts that the trial court erred in granting the motion for summary judgment because he presented evidence to establish that a member of the Board was biased. "In judicial and administrative proceedings, the litigants are entitled to the cold neutrality of an impartial tribunal." *Cauthern v. City of White Bluff*, No. M1998-00991-COA-R3-CV, 2002 WL 1389583, at *2 (Tenn. Ct. App. June 27, 2002) (citations omitted). "It is well established that administrative decision makers are presumed to discharge their duties with honesty and integrity." *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *7 (Tenn. Ct. App. July 26, 2001) (citing *Cooper v. Williamson Cnty. Bd. of Educ.*, 803 S.W.2d 200,

203 (Tenn. 1990); *Jones v. Greene*, 946 S.W.2d 817, 825 (Tenn. Ct. App. 1996)). "Thus, the party claiming bias bears the burden of proving the grounds for disqualification." *Jones*, 946 S.W.2d at 826 (citing *Gay v. City of Somerville*, 878 S.W.2d 124, 127, (Tenn. Ct. App. 1994)). Grounds for disqualification may include "personal interest bias, personal prejudice [], or prejudgment of the material facts." *Martin v. Sizemore*, 78 S.W.3d 249, 266 (Tenn. Ct. App. 2001).

In this case, Owner alleges that "Mr. Lee displayed an obvious bias against [him] because [he] asked the [B]oard to give [him] the same amount of time Mr. Lee had taken to remodel a residence." He opines that Mr. Lee displayed evidence of this alleged bias when Mr. Lee refused to review his weekly progress reports at the hearing. Owner conceded at the hearing that he did not have documentation concerning his plan for completing the repairs and only offered the weekly reports as evidence that he had completed *some* work in Applewood. We believe that Mr. Lee's refusal to review the weekly reports may have been evidence of his irritation with Owner because the weekly reports referenced by Owner were not the reports requested by the Board. However, there is no evidence in the record before this court to support Owner's conclusory allegations that Mr. Lee was biased or had prejudged the material facts. We acknowledge that the exchange between Mr. Lee and Owner was tense. Nevertheless, Owner's allegations, without additional evidence, simply do not rise to the level of a sufficient ground for disqualification. Accordingly, we hold that there was not *any* material evidence from which the trier of fact could infer that a member of the Board was biased and should have been disqualified. We affirm the court's grant of summary judgment on this issue.

8.

Owner claims that the trial court erred in granting the motion for summary judgment because the Board acted without material evidence to support its decision. He argues that the record did not contain any evidence establishing that the cost to repair the subject buildings exceeded 50 percent of the value of the buildings. Defendants respond that the record contained substantial and material evidence to support the Board's decision.

Having reviewed the record, we agree with Owner that evidence was not presented regarding the original condition or value of the subject buildings. Likewise, evidence was not presented regarding the cost to repair the damage, decay, or deterioration of the subject buildings. Indeed, the following narration comprised the only discussion regarding the percentage of damage, decay, or deterioration to the subject buildings:

Mr. Lee:     [M]y motion to vacate and demolish is based on the standards provided in the [Code, which] provides for, if the property is

-17-

[50] percent damaged, decayed or deteriorated then an order to vacate and demolish is warranted. If a structure is less than 50 percent damaged, decayed or deteriorated then it is perfectly reasonable and in order to order a motion for repair. We have [ordered a motion for repair]. That was done by letter that Mr. Ward sent as a follow-up to the inspection of May 27, 2009. Mr. Ward ordered [Owner] to provide a repair sequence by a professional, a design professional, which was not done.

Also[,] my thinking is that if you refer back to the status, which is dated November 3, okay, we have the status of each of the twelve units of the four buildings.

Now, being a number geek and loving studies like we do here in Oak Ridge I did a summary of my own. I see that [building] 115 has [0] percent compliance, okay? I'm assuming that indicates a level of deterioration. I see that [building] 105 has [92] percent noncompliance, which I think indicates a level of deterioration in that building. I see that building [119] has [66] percent noncompliance. This is based on the document that you have in your packet dated November 3rd of this year. And I see [that building 121 has] [0] percent compliance. So, based on these numbers and this status, it is my opinion that I've met the threshold of [50] percent damaged, decayed or deteriorated, and I think that the motion to vacate and demolish is warranted.

A similar issue was presented before this court in *Hoover v. Metropolitan Board of Housing Appeals*, 936 S.W.2d 950 (Tenn. Ct. App. 1996). In *Hoover*, landowners appealed the trial court's affirmation of the Metropolitan board's order of demolition regarding three properties. Landowners alleged that the record did not support the board's conclusion that the properties could not be repaired for an amount less than 50 percent of the value of the properties. Landowners noted that evidence was not introduced regarding the value of the property or the cost of repairs. In affirming the court's decision, this court stated that landowners "were notified that the inspectors and the department had made a determination" regarding the cost of repair and the value of the properties but "made no issue as to th[at] determination or competency of evidence in his appeal" to the board. *Id.* at 954. This court ruled that the failure to object to the requisite findings amounted to a waiver of the issue because landowners essentially deprived the department of the opportunity to present evidence supporting its conclusion. *Id.* This court also held that the record contained

substantial and material evidence in the record "that each of the subject properties required repairs the cost of which would exceed [50 percent] of the value of the property." *Id.*

Like *Hoover*, the record before this court contains a massive list of necessary repairs and pictorial illustrations. Unlike *Hoover*, Owner was never notified prior to the hearing that the City made a determination regarding the cost of repairs in relation to the value of the subject buildings. Owner was simply notified that a hearing was being held to determine whether the subject buildings were unfit for human occupation or use. Likewise, the recommendation and findings submitted to the Board provided that the City simply sought an order to repair and a timetable of when and how Owner would complete the structural repairs and address the life safety issues. Instead, Mr. Lee moved to order the demolition of the subject buildings because he believed that Owner had already been given an adequate amount of time in which to repair the buildings. While Owner's continued noncompliance may have been infuriating to the Board, the Board did not have the power to order the demolition of property simply because Owner failed to follow directions.

Pursuant to the Code, the Board may only order demolition when the cost of repairs exceed 50 percent of the value of the property. In declaring that demolition was appropriate, Mr. Lee erroneously focused on Owner's percentage of compliance for each building rather than the cost of repair versus the value of each of the subject buildings. Viewing all of the evidence in the light most favorable to Owner and resolving all factual inferences in Owner's favor, we conclude that the trial court erred in granting the motion for summary judgment on this issue because genuine issues of material fact remained as to whether the Board acted without material evidence to support its decision to demolish the subject buildings.

Ordinarily, we would remand this case to the trial court for a hearing on this issue. Remand to the trial court is unnecessary in this case because the record before this court comprises the totality of the record that would be considered by the trial court upon remand. Indeed, the trial court may not consider additional evidence that was not presented to the Board in determining whether the Board acted without material evidence. *Weaver v. Knox Cnty. Bd. of Zoning Appeals*, 122 S.W.3d 781, 786 (Tenn. Ct. App. 2003). Having found no evidence in the record regarding the value of the subject buildings and the cost to repair the buildings, we believe that the Board acted without material evidence to support its decision to demolish the buildings. We vacate the decision of the Board to demolish the subject buildings and remand this case to the Board to accept relevant evidence and testimony regarding the value of the subject buildings and the cost to repair them and to reach a decision based on that evidence. *See generally Lewis v. Bedford Cnty. Bd. of Zoning Appeals*, 174 S.W.3d 241, 247-48 (Tenn. Ct. App. 2004).

B.

Owner asserts that the trial court erred in refusing to admit additional evidence. Defendants respond that Owner had the opportunity to submit additional evidence or facts in response to their motion for summary judgment and assert that Owner refused to issue a response to their statement of undisputed material facts.

Judicial review under a common law writ of certiorari is limited to the record made before the board or agency. *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). The court may permit additional evidence "'on the issue of whether the administrative body exceeded its jurisdiction or acted illegally, capriciously or arbitrarily.'" *Id.* (quoting *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983)). However, "once the complete record has been filed, the reviewing court may proceed to determine whether the petitioner is entitled to relief without any further motions and, if the court chooses, without a hearing." *Jeffries*, 108 S.W.3d at 868. We acknowledge that the case proceeded to the summary judgment stage rather than an evidentiary hearing on the petition. While filing a motion for summary judgment in a certiorari case is not the ordinary route chosen by most defendants, Defendants were allowed to use Rule 56 of the Tennessee Rules of Civil Procedure to dispose of Owner's claims. *Id.* Likewise, Owner could have presented additional evidence in his response to the motion for summary judgment in an effort to highlight "the existence of material factual disputes." *Id.* Owner simply failed to present any additional evidence on the issues raised in his complaint. Accordingly, we conclude that this issue is without merit.

## V. CONCLUSION

The judgment of the trial court is reversed in part, as to the grant of the motion for summary judgment relative to Owner's complaint that the Board acted without material evidence to support its decision to demolish the subject buildings. The judgment of the trial court is affirmed in part, as to the grant of the motion for summary judgment relating to all other issues. The case is remanded to the Board for proceedings consistent with this opinion. Costs of the appeal are taxed to the appellee, City of Oak Ridge.

_____
JOHN W. McCLARTY, JUDGE